467 So.2d 277 (1985)
METROPOLITAN LIFE INSURANCE COMPANY, Petitioner,
v.
Ernest D. McCARSON, Sr., Etc., et al., Respondents.
No. 63739.
Supreme Court of Florida.
March 7, 1985.
Rehearing Denied May 6, 1985.
Arthur J. England, Jr. of Fine, Jacobson, Block, England, Klein, Colan & Simon, Miami, Donald J. Sasser and William H. Pruitt, West Palm Beach, and John G. Pare, Tampa, for petitioner.
Samuel D. Phillips, M. Lee Thompson and Larry Klein, West Palm Beach, for respondents.
EHRLICH, Justice.
This cause is before us because the decision of the district court in Metropolitan Life Insurance Co. v. McCarson, 429 So.2d 1287 (Fla. 4th DCA 1983), directly and expressly *278 conflicts with a decision of another district court, Gmuer v. Garner, 426 So.2d 972 (Fla. 2d DCA 1982). We have jurisdiction, article V, section 3(b)(3), Florida Constitution, and we approve in part and quash in part the decision of the Fourth District.
McCarson was issued a group insurance policy by Metropolitan Life which covered employees of his paint and body shop including his wife. The next year, Mrs. McCarson became incapacitated with Alzheimer's disease. Metropolitan stopped payment of benefits for her, claiming that the condition had been preexisting and that the failure to disclose it voided her coverage. McCarson brought suit; Metropolitan was found to be in breach of contract and ordered to provide coverage pursuant to the contract. Later it became necessary for Mrs. McCarson to have round-the-clock nursing, for which Metropolitan was liable under the terms of its contract until the policy lapsed or Mrs. McCarson became eligible for Medicare. After requesting proof of ineligibility for Medicare, and receiving no response, Metropolitan eventually discontinued payments and the round-the-clock nursing ceased. McCarson brought suit to enforce the policy provisions, but in the meantime, Mrs. McCarson was removed from her home and placed in a total care nursing facility where her condition deteriorated remarkably. A few months later she died of a heart attack. Medical testimony indicated that the stress of her new surroundings probably brought about her demise. McCarson amended his original complaint and, as Lucille's personal representative, added a count for wrongful death on the theory that Metropolitan's failure to fulfill the terms of the contract had been a willful infliction of emotional distress upon Mrs. McCarson which had thereby caused her death. A jury awarded McCarson medical costs, $200,000 for the emotional distress suffered by Mrs. McCarson, and $250,000 for her wrongful death. The trial court struck the award for Mrs. McCarson's emotional distress but upheld the remainder of the award. Metropolitan appealed but the Fourth District Court of Appeal affirmed the award, finding a cause of action for intentional infliction of emotional distress sufficient to support the cause of action for wrongful death.
We approve the Fourth District's decision insofar as it states that Florida recognizes the tort of intentional infliction of emotional distress. We have skirted that issue in previous cases, finding it not to be directly before the Court. See e.g., LaPorte v. Associated Independents, Inc., 163 So.2d 267 (Fla. 1964); Slocum v. Food Fair Stores, 100 So.2d 396 (Fla. 1958); Kirksey v. Jernigan, 45 So.2d 188 (Fla. 1950). The thorough discussion and analysis of the Fourth District below shows that four of the five district courts of appeal have recognized that tort. Dominguez v. Equitable Life Assurance Society, 438 So.2d 58 (Fla. 3d DCA 1983); Scheuer v. Willie, 385 So.2d 1076 (Fla. 4th DCA 1980); Food Fair, Inc. v. Anderson, 382 So.2d 150 (Fla. 5th DCA 1980); Ford Motor Credit Co. v. Sheehan, 373 So.2d 956 (Fla. 1st DCA), cert. dismissed, 379 So.2d 204 (Fla. 1979). Only the Second District has failed to recognize the availability of an independent cause of action for intentional infliction of emotional distress. Gmeur v. Garner. We are in agreement with the majority and so disapprove the decision in Gmeur.
The Fourth District joined with the First and Fifth in adopting Section 46, Restatement (Second) of Torts (1965) as the appropriate definition of the tort. Nonetheless, the Fourth District did not conform its findings to the comments explaining the application of this definition:
d. Extreme and outrageous conduct ... . . It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, *279 as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
... .
g. The conduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances. The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.
Restatement (Second) of Torts § 46 (1965). In light of the verdict in McCarson's favor, we must assume all disputes of fact were resolved and all reasonable inferences were drawn in his favor. Nonetheless, looking at the facts in the light most favorable to him, the facts as a matter of law are not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." Rather, the insurance company according to the terms of the policy had the right to demand proof of ineligibility for Medicare. Although this demand and the withholding of further benefits had tragic results, and although we must assume from the jury's verdict that it found Metropolitan was in reckless disregard of the potential for such tragedy, Metropolitan did no more than assert legal rights in a legally permissible way. As such, Metropolitan's actions are "privileged under the circumstances."
We therefore quash the decision of the district court insofar as it holds that Lucille McCarson had a cause of action for intentional infliction of emotional distress sufficient to support Mr. McCarson's suit for wrongful death.
Because the district court found the wrongful death action to be supported by the cause of action for intentional infliction of emotional distress, it did not address the counts alleging breach of contract or bad faith dealing. In the interests of judicial economy, we will do so now.
We are well aware that, prior to this Court's decision in VanBibber v. Hartford Accident & Indemnity Insurance Co., 439 So.2d 880 (Fla. 1983), injured parties entitled to benefits were considered intended third-party beneficiaries to liability insurance policies and, as such, were entitled to enforce the policy directly against the insurer. This analysis was justified by the adversarial relationship between the insured and the injured party and the insurance company's status as the real party in interest from whom the injured party would be collecting for his damages once liability was proven. See e.g., Shingleton v. Bussey, 223 So.2d 713 (Fla. 1969). Liability insurance provides indemnity against liability. In the usual liability policy, the insuror is bound to pay damages for bodily injury or property damage for which any covered person becomes legally liable, up to the applicable policy limits, because of an accident and such damages are directly payable to the injured party. To that extent, the insurer contracts to bear the insured's financial responsibility to the intended third-party beneficiary.
However, this analysis is not applicable to the policy here before us, which provides indemnity against loss. The insurance contract into which Mr. McCarson entered promised to indemnify him for any covered medical expenses he incurred on behalf of his covered dependents, including Lucille. The insurer did not relieve him of any financial responsibility for the payment of medical expenses incurred. No benefits were ever payable directly to her. Neither were her interests adverse to the insured's; on the contrary, they both were adversely aligned against the insurance company. Thus, because she reaped no direct benefit, and because the insured was in a position to protect her interests, she was at best an incidental third-party beneficiary of the contract. It is axiomatic in contract law that an incidental beneficiary cannot enforce the contract. See J. Calmari & J. Perillo, Contracts §§ 17-2, 17-6 (2d ed. *280 1977). Therefore, Lucille McCarson would not have been able to maintain a cause of action either for breach of contract or for bad faith dealing on the contract. Florida's Wrongful Death Act, in section 768.19, Florida Statutes (1981), requires, as a condition precedent to bringing the action for wrongful death, that the decedent have a cause of action on which she could have brought suit had she survived. Such is not the case here on the facts pleaded. Mr. McCarson's wrongful death claim must be disallowed.
Accordingly, the decision of the district court is approved in part and quashed in part and the case is remanded to the trial court for entry of judgment not inconsistent with this opinion.
It is so ordered.
OVERTON, ALDERMAN and McDONALD, JJ., concur.
BOYD, C.J., and SHAW, J., concur in part and dissent in part with opinions.
BOYD, Chief Justice, concurring in part and dissenting in part.
I concur in the Court's disapproval of the district court's affirmance of the recovery for wrongful death by reckless or intentional infliction of emotional distress. I base my conclusion not only on the lack of wilful, wanton, or outrageous conduct on the part of the insurer, but also on the lack of a prima facie showing by evidence that the insurer's conduct caused the death of Mrs. McCarson.
The fact that the deceased's condition deteriorated badly after she was placed in a nursing home does not establish that the denial of benefits caused the deterioration and subsequent death. There was insufficient evidence to raise a proper jury question on the matter of causation. Another way of expressing this is to say that it was not foreseeable that a death would ensue from the denial of benefits. As the majority concludes, the insurer was entitled to strict compliance with the policy requirements, and cannot be held responsible in tort for an occurrence only very tenuously connected with its taking a step it was legally entitled to take.
On the matter of whether Mrs. McCarson was a direct beneficiary of the group health insurance policy, I totally disagree with the majority's conclusion and agree with the statements of Justice Shaw. The deceased was clearly a direct beneficiary of the policy, and not a third-party beneficiary. Under my view of this case, the answer to this question makes no difference to the outcome because there was no way the insurer's conduct could have in fact caused the death of Mrs. McCarson.
SHAW, Justice, concurring in part and dissenting in part.
I agree that Florida recognizes the tort of intentional infliction of emotional distress. Having disposed of the point of law which establishes our conflict jurisdiction, I would approve the district court decision in its entirety. I recognize that the question of whether petitioner's conduct rose to the level of extreme and outrageous conduct is a difficult and close decision. However, a jury, a trial judge, and a district court believed it did. I would not substitute this Court's judgment for theirs. Glass v. Parrish, 51 So.2d 717, 721 (Fla. 1951).
I also disagree with the majority's holding that Lucille McCarson was, at best, an incidental third-party beneficiary of the health plan contract and could not have maintained a cause of action either for breach of contract or for bad faith dealing by the insurance company.
Lucille McCarson was originally covered under the group health plan as an employee. After she left employment, and before the suit, she became covered as a dependent spouse. The critical issue is whether Lucille McCarson was an intended or incidental beneficiary under the health-plan contract. Restatement (Second) of Contracts (1979) provides:
§ 302. Intended and Incidental Beneficiaries
(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a *281 promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.
As I read section 302, Lucille McCarson meets the test in both subsections (1)(a) and (b). Under Florida law spouses are reciprocally responsible to each other for necessities, including medical bills. Parkway General Hospital, Inc. v. Stern, 400 So.2d 166 (Fla. 3d DCA 1981); Manatee Convalescent Center, Inc. v. McDonald, 392 So.2d 1356 (Fla. 2d DCA 1980); chapter 61, Florida Statutes (1971). Thus, Ernest McCarson was responsible for the medical bills of his spouse, Lucille. The health plan was a method of meeting that responsibility. In contracting to provide medical coverage for Lucille (beneficiary), both the promisee (Ernest) and the promisor (Metropolitan Life) intended to give the beneficiary the benefit of the promised performance. It appears to me that Lucille could reasonably have relied on the contractual promise as manifesting an intent to confer a right on her, within policy limits, and that she might well have foregone obtaining other medical insurance to meet her needs. It is this aspect of the majority decision that I find particularly disturbing from a public policy viewpoint. The majority opinion holds that covered dependents under medical insurance policies are only incidental beneficiaries and have no right to enforce the performance of the policy. I suspect this will come as a surprise and disappointment to millions of medical insurance policy holders.