467 So.2d 1114 (1985)
C. Wesley KENT, III, Appellant,
v.
Hershel HARRISON, Appellee.
No. 84-2074.
District Court of Appeal of Florida, Second District.
May 1, 1985.
Alan D. Bennett and Jeffrey King of Bennett & King, P.A., Sarasota, for appellant.
No appearance for appellee.
FRANK, Judge.
The appellant, C. Wesley Kent, III, sued the appellee, Hershel Harrison, alleging that Harrison initiated and for several months continued a campaign of telephonic harassment in the aftermath of a verbal conflict which occurred between them on a Sunday morning in Brevard County. The sole issue before us, decided adversely to Kent in the lower court and here, is whether the disturbing conduct attributed to Harrison constituted the intentional infliction of emotional distress. The lower court, following our decision in Gmuer v. Garner, *1115 426 So.2d 972 (Fla. 2d DCA 1982), directed a verdict for Harrison. The supreme court's recent rejection of Gmuer in Metropolitan Life Insurance Company v. McCarson, 467 So.2d 277 (Fla. 1985), however, does not alter the result in the present matter.
In Ponton v. Scarfone, 468 So.2d 1009 (Fla. 2d DCA 1985), we stated:
The threshold test to be followed in assessing behavior claimed to constitute the "intentional infliction of emotional distress" is whether such behavior is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." In applying that standard, it is manifest that the subjective response of the person who is the target of the actor's conduct is not to control the question of whether the tort occurred. Rather, an evaluation of the claimed misconduct must be undertaken to determine, as objectively as is possible, whether it is "atrocious, and utterly intolerable in a civilized community." That burden falls to the judiciary  it is a matter of law, not a question of fact.
In testing the correctness of the lower court's action, we treat the record before us in a light most favorable to Kent. Thus, we harbor no doubt that the telephone calls received by Kent were offensive and impaired him, his tranquility and the peacefulness of his home. We are no less persuaded that Harrison's conduct was intentionally designed and undertaken to distress and annoy Kent. In fulfilling the responsibility assigned to us in Metropolitan, however, we cannot conclude that such behavior was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." 467 So.2d at 279. Moreover, Kent's state of vexation, irritation and agitation cannot be the foundation for a finding that Harrison's behavior is within the range marked out in Metropolitan by the standard of "atrocious and utterly intolerable in a civilized community." Id.
Affirmed.
SCHEB, A.C.J., and HALL, J., concur.