LEHAN, Judge.
First National Bank of Florida appeals from a jury verdict and judgment against it for $50,000 based upon conduct of the bank in transactions with appellee. The verdict and judgment resulted from appellee’s counterclaims against the bank in suits instituted by the bank, including a mortgage foreclosure.
The bank raises several contentions on appeal, one of which is that there was reversible error in the trial court’s failure to grant the bank’s timely motion for mistrial following inflammatory and prejudicial comments by a witness called by appellee who was a former attorney for the bank, who was, as guarantor, a codefendant with appellee, and who was acting as his own attorney in the trial of this case. We agree with that contention, reverse on that ground, and remand for a new trial.
The testimony of the attorney-witness, which related to transactions other than those in issue in this case, was, first, that bank officers engaged in “acts of questionable business conduct” and, second, that the attorney-witness “saw this bank and its officers commit criminal activity unethical business acts.” The testimony as to criminal activity was given notwithstanding the trial court’s having previously sustained an objection, on grounds of irrelevancy, to the prior testimony as to other unspecified “acts of questionable business conduct.” Also, that conclusory testimony as to criminal activity, which followed a question to the witness from the attorney for counter-claimant, was not responsive to the question which asked the witness to relate past conduct engaged in by the bank with other customers similar to the course of conduct the bank had had with counterclaimant. The attorney-witness argued at trial, and appellee argues on appeal, that the bank’s waiver of confidentiality as to any testimony by the attorney regarding prior dealings by him, as attorney for the bank, with the bank relating to matters in the lawsuit justified the testimony. We find no merit in that argument. There was nothing in the waiver which waived objections to prejudicial conclusions of the type involved here. Nor does the record concerning the attorney-witness’s explanation to the trial court, out of the hearing of the jury, of his purported basis for those conclusions convince us that he saw relevant activity of the type described.
Accordingly, the record supports the argument of appellant that the .impropriety of the prejudicial testimony was clear and that its taint could not be erased from the minds of the jurors. We are convinced that the witness’s conclusions as to criminal and unethical conduct of the bank in other transactions was so highly inflammatory and prejudicial as to require reversal, especially in the context of the case being presented under the counterclaim which alleged improper conduct by the bank in the dealings with counterclaimant which gave rise to the foreclosure suit. See Williams v. Winn Dixie Stores, Inc., 443 So.2d 195 (Fla. 3d DCA 1983); Regan Insurance Agency v. Krause & Sons, Inc., 325 So.2d 35 (Fla. 3d DCA 1976). Borrowing from *388 the language of the Florida Supreme Court in its reversal and remand for a new trial in Seaboard Air Line Railroad v. Strickland, 88 So.2d 519 (Fla.1956), the testimony had the effect of “gravely impairing a calm and dispassionate consideration of the evidence and the merits by the jury....” Id., at 523.
There were also other aspects raised on appeal concerning what has been characterized as the relatively complex trial. Although those aspects are not before us for determination, see Borenstein v. Raskin, 401 So.2d 884, 886 (Fla. 3d DCA 1981); Southern American Fire Insurance Co. v. Rinzler, 324 So.2d 133 (Fla. 1st DCA 1975), they have been argued by the parties, and we feel that in the interests of judicial economy we should now refer to them because they would again be involved at the new trial. They concern the bank’s contention that the evidence was insufficient to support the $50,000 award of damages.
The damages claims apparently included the following four principal approaches. First, appellee contended that a $3,900 mortgage payment by him was misapplied by the bank. However, the evidence indicates that appellee was in default on the mortgage notwithstanding any such misapplication. Appellee’s position apparently was that he had ceased making mortgage payments because of the alleged misapplication and the failure of the bank to return to him the $14,400 which was the subject of his second contention. But, as explained below, appellee’s second contention appears to lack support in the record. Also, the evidence did not show that the bank failed to apply the $3,900 to obligations of appel-lee, and, as noted above, any such misapplication would not seem to have caused the foreclosure. It does not appear how any such misapplication was the proximate cause of damage to appellee.
Second, appellee contended that the bank wrongly received from, and failed to return to, appellee approximately $14,400 in payments on a loan for the purchase of an airplane since the loan was not owed by appellee. However, the record contains a specific, written authorization from appel-lee for the bank to debit a corporate bank account, on which appellee apparently had check writing authority, for $669.69 monthly payments on the airplane loan, which payments evidently ultimately totaled approximately $14,400. It, therefore, appears irrelevant whether or not appellee actually owed the amount of that loan. We note that the name of the apparent corporate debtor on the airplane loan is referred to on that authorization. Appellee disclaimed any interest in that corporation, but the record contains a copy of a resolution of that corporation, executed by appellee two months after the execution of the foregoing written authorization, which shows appellee as the president and secretary of that corporation. Although appellee seems to have contended that he would not have authorized the payments had he known the loan was not his and that the bank told him the loan was his, the record appears to belie any reasonable such misconception on his part. As noted above, appellee’s connection with that corporate debtor and ap-pellee's knowledge of that debtor’s involvement with the airplane loan is indicated by the record. Also, the record is clear that appellee was at least the moving force in obtaining the airplane loan and that appel-lee did so for the purpose of having the plane available for his use. A portion of the verdict rendered by the jury said that appellee’s reliance on “the bank’s representations” was not reasonable. It is not clear whether that portion of the verdict referred to the bank’s alleged misrepresentation that appellee owed the airplane loan or referred only to the alleged misrepresentation which was the subject of appellee’s third contention which is dealt with herein-below. But if that verdict was a finding as to the bank’s alleged misrepresentation that appellee owed the airplane loan, that finding would seem entirely and without doubt supported by the record.
Third, appellee contended that the bank misrepresented to him that repairs to a boat to be purchased by him would cost about $4,000, whereas the repairs actually cost about $44,000. However, the jury specifically found that there had been no fraud by the bank, and the jury also specifically *389 found that any reliance by appellee on representations of the bank was not reasonable. It certainly cannot be concluded that those findings were based upon insufficient evidence.
Fourth, appellee testified to mental anguish as a result of the bank’s foreclosure. However, no damages would have been recoverable on that basis because it could not be concluded that the bank’s conduct portrayed by the evidence was “so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency_” Metropolitan Life Insurance Co. v. McCarson, 467 So.2d 277, 278-79 (Fla.1985); See also Ponton v. Scarfone, 468 So.2d 1009 (Fla. 2d DCA 1985).
Reversed and remanded for a new trial.
CAMPBELL, A.C.J., and SCHOON-OVER, J., concur.