502 So.2d 1268 (1987)
Zbigniew SCHELLER, Appellant,
v.
AMERICAN MEDICAL INTERNATIONAL INC., et al., Appellees.
Nos. 83-1617, 83-2209 and 83-2210.
District Court of Appeal of Florida, Fourth District.
January 7, 1987.
As Amended on Grant of Rehearing March 18, 1987.
*1269 Edna L. Caruso of Edna L. Caruso, P.A., and Montgomery, Lytal, Reiter, Denney & Searcy, P.A., West Palm Beach, for appellant.
Mercer K. Clarke of Smathers & Thompson, Miami, for appellees.
DOWNEY, Judge.
We have for consideration a final order of dismissal as to two counts and a partial summary judgment as to a third count of a multi-count complaint.
This litigation arose out of the relationship of Appellant Zbigniew Scheller (Scheller) and Palm Beach Gardens Community Hospital (hospital), American Medical International, Inc. (AMI), which owned the controlling interest in the hospital, and T.R. Bruce, Jr., the hospital administrator. It appears that Scheller was both a member of the medical staff of the hospital and was under contract with the hospital as medical director of the hospital's pathology laboratory. The hospital terminated Scheller as director of the laboratory and he eventually brought suit against all of the abovenamed parties. A jury returned a large verdict in Scheller's favor for both compensatory and punitive damages. While that judgment was on appeal to this court, Scheller claims AMI, the hospital, and the hospital administrator prohibited him from reviewing and interpreting the test results of his patients, refused to provide him with billing information and, instead, the hospital billed his patients for the clinical services rendered, creating a double billing problem. Furthermore, Scheller claimed that the defendants refused to allow him to enter into a contract with Dr. Frederick Hobin, medical director of the pathology laboratory of the hospital, which would allow him to substitute for Hobin on weekends and during vacation periods. Finally, Scheller claimed that the defendants entered into a course of conduct, which, among other things, included:
1. Intentional falsification of documents in the prior trial;
2. Attempt to bribe witnesses to testify in the prior trial;
3. Evasion of court orders;
4. Ignoring the prior jury verdict and judgment;
5. Ostracizing plaintiff by
a. removing his name from the door
b. refusing to list his name or extension in the hospital directories
c. denying him "basic support services"
d. excluding him from social affairs;
6. Attempting to expel plaintiff from medical staff meetings;
7. Evicting him from his hospital office;
8. Falsely accusing him of theft;
9. Prohibiting laboratory personnel from conversing with him;
10. Intentionally delaying support services;
11. Providing laboratory reports on his patients to another pathologist who performed services for those patients without his consent;
12. Publishing false information regarding his income.
Scheller filed a multi-count complaint in which he alleged a cause of action for tortious interference with an advantageous business relationship in Count II. The basis *1270 for said claim was the fact that, as a member of the hospital medical staff, he was entitled under the medical staff by-laws to render pathology services to other doctors and, in so doing, was entitled to use of the hospital facilities to do the routine work, and he was also entitled thereunder to submit medical fee statements to the patients, or hospital, as the case may be. Nevertheless, he claimed the defendants precluded him from reviewing and interpreting the test results of his patients, refused him billing information and billed his patients themselves, causing double billing.
In Count III of said complaint Scheller set forth a second count for tortious interference with an advantageous business relationship based upon defendants' interference with a proposed agreement Scheller had with Dr. Hobin. It was alleged that Hobin was the medical director of the pathology laboratory; that Hobin had proposed to Scheller that Scheller substitute for Hobin on weekends and vacation periods; and that, although Scheller and Hobin were approved by the medical staff, defendants refused to allow Scheller to substitute for Hobin.
The final count under consideration here is Count VI, in which Scheller claimed damages for intentional infliction of emotional distress based upon the intentional harassment and course of conduct set forth earlier in this opinion.
From an order granting a motion to dismiss with prejudice Counts II and VI for failure to state a cause of action, and a summary judgment as to Count III, Scheller has perfected this appeal.
Commencing with the summary judgment entered against Scheller on Count VI, we find no reversible error demonstrated. The contention presented by Scheller in support of this count is that a cause of action for intentional infliction of emotional distress is stated where the emotional distress is intentionally caused by, or incident to, a separate actionable tort or is a reasonably foreseeable consequence of such tort. Furthermore, Scheller argues that recovery may also be had where the defendants' conduct is so extreme and outrageous in causing severe emotional distress that it does not have to be accompanied by an independent tort. While we agree with the latter part of Scheller's analysis of this cause of action, we disagree with the former. There was a time, perhaps beginning with Kirksey v. Jernigan, 45 So.2d 188 (Fla. 1950), when the rule in Florida was that intentional infliction of emotional distress was not actionable unless incident to or connected with an independent tort. That position was most recently confirmed by the Second District Court of Appeal in Gmuer v. Garner, 426 So.2d 972 (Fla. 2d DCA 1982). However, in Metropolitan Life Insurance Co. v. McCarson, 429 So.2d 1287 (Fla. 4th DCA 1983), this court adopted the rule set forth in section 46, Restatement (Second) of Torts (1965), and held that an independent tort exists in Florida for intentional infliction of emotional distress. There is no requirement that it be associated with another tort. On conflict certiorari, Metropolitan Life Insurance Co. v. McCarson, 467 So.2d 277 (Fla. 1985), the Supreme Court of Florida approved that part of this court's opinion as a correct statement of the rule, but pointed out that, while we adopted section 46 of the Restatement as the appropriate definition of the tort, we failed to conform to the Comments in the Restatement, which explain the application of the definition. The supreme court went on to make it clear that the conduct necessary to give rise to the tort must be "extreme and outrageous." Quoting from the Restatement, it is stated under Comment d.:
Extreme and outrageous conduct. The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the *1271 conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off steam. See Magruder, Mental and Emotional Disturbance in the Law of Torts, 47 Harvard Law Review 1033, 1053 (1936). It is only where there is a special relation between the parties, as stated in § 48, that there may be recovery for insults not amounting to extreme outrage.
Restatement (Second) of Torts § 46 (1965).
With regard to the sufficiency of the allegation to state a cause of action, it is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. Restatement (Second) of Torts § 46, Comment h. We agree with the trial court that the alleged conduct charged against the defendants was not sufficient to meet the test of conduct so outrageous in character and "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at Comment d. Thus, we affirm the dismissal of Count VI.
Count III alleges that Dr. Hobin, director of the pathology laboratory, requested Scheller to provide alternate weekend and vacation coverage for him in the pathology laboratory; that such an arrangement was approved by the medical chief of staff, but that AMI and the hospital refused to allow Scheller to become "Acting Director of that laboratory" in Hobin's absence, thus interfering with Scheller's advantageous business relationship. The deposition proof in the record shows that Scheller testified that Hobin asked him to provide coverage of the laboratory duties as aforesaid; that Scheller asked for time to think about it, and later advised Hobin he would do it; however, he wanted Hobin to get permission for Scheller to be nominated the "acting director" of the laboratory during Hobin's absences. Scheller actually wrote a letter to the hospital administrator requesting the hospital to designate him as acting director in Hobin's absence. According to Scheller, the administrator called AMI regarding the request and received a negative response.
Based upon the record, the trial judge found there was no genuine issue of material fact and that Scheller had a business proposal from Hobin to which Scheller imposed a condition, i.e., that he be made acting director while serving in Hobin's absence, and the condition was rejected by the defendants. As a result, the relationship never reached fruition. An examination of the record convinces us that the trial court was correct in entering summary judgment.
The amendment to the Second Amended Complaint, Count II, also purports to allege a cause of action in tortious interference with an advantageous business relationship. However, the business relationship in Count II is alleged to be one existing between Scheller, on the one hand, and other physicians and their patients, on the other. The thrust of the cause of action alleged therein is that, under the medical staff by-laws, Scheller, as a member of the medical staff, was entitled to offer and perform pathology services to other physicians and, in the performance of those services, *1272 to have the use of the hospital facilities and to directly bill patients without interference from the hospital. It is alleged that defendants prevented him from effectively offering said services by refusing his use of the hospital facilities, and interfered with his billing by refusing to furnish necessary billing information and by double billing patients. As a result of this interference, Scheller alleges that he lost patients and referring physicians.
The elements of a cause of action for intentional interference with an advantageous business relationship are: 1) the existence of an advantageous relationship under which the plaintiff has legal rights; 2) an intentional and unjustified interference with that relationship; and 3) damage to the plaintiff as a result of the defendant's actions. American Medical International, Inc. v. Scheller, 462 So.2d 1 (Fla. 4th DCA 1984), rev. denied, 471 So.2d 44 (Fla. 1985); Wackenhut Corp. v. Maimone, 389 So.2d 656 (Fla. 4th DCA 1980), rev. denied, 411 So.2d 383 (Fla. 1981). We hold the allegations of Count II sufficient to meet those requirements. Appellees raised numerous arguments on motion to dismiss purporting to show that the complaint as alleged was deficient. However, we have considered all of them and find no merit therein. For example, one of the attacks on this count is that it is identical to one of the counts in the original litigation which was directed out. However, while the same type of conduct constituting interference is charged, the time frame is different. The conduct complained of was an ongoing thing and continued long after the original suit was filed. Appellees also contend the count is defective because it is based upon an alleged contract between the hospital and the medical staff arising out of the by-laws. While case law does hold that rights arising from the by-laws do amount to a contract with the hospital, Margolin, M.D. v. Morton F. Plant Hospital Association, 348 So.2d 57 (Fla. 2d DCA 1977), that is not the contract Scheller contends was interfered with. Rather, the contract is alleged to be one between Scheller and other physicians and patients who have designated Scheller to handle their pathology services.
In view of the foregoing, we affirm the trial court's orders dismissing Count VI with prejudice, and the summary judgment on Count III, and reverse the order dismissing Count II with prejudice and remand the cause for further appropriate proceedings.
AFFIRMED IN PART; REVERSED IN PART; and remanded with directions.
ANSTEAD and DELL, JJ., concur.