510 So.2d 985 (1987)
DEPENDABLE LIFE INSURANCE COMPANY, a Corporation, Appellant/Cross-Appellee,
v.
John J. HARRIS, Appellee/Cross-Appellant.
No. 86-492.
District Court of Appeal of Florida, Fifth District.
July 9, 1987.
Rehearing Denied August 5, 1987.
S. Gordon Blalock, of Blalock, Holbrook & Akel, P.A., Jacksonville, for appellant/cross-appellee.
Stephen A. Hilger, of Gray, Harris & Robinson, P.A., Orlando, for appellee/cross-appellant.
SHARP, Judge.
Dependable Life Insurance Company appeals from a final judgment after a jury trial which awarded Harris a total of $15,607.79 (including prejudgment interest) in actual damages for failure to pay under a disability insurance policy, $47,585.00 in compensatory damages, and $95,170.00 in punitive damages for the tort of wrongful infliction of emotional distress. Dependable questions the actual damage award as containing overlapping or duplicative elements. Dependable also challenges the $56,250.00 award of attorney's fees to Harris pursuant to section 627.428(1). We affirm the judgment, but reverse the award of attorney's fees.
In a prior appeal to this court we affirmed, per curiam, Dependable's liability for coverage under its disability policy to Harris. Thus, the only issue in this case was the amount due Harris and the actual damages for Dependable's failure to pay under the contract.
*986 The verdict was based on a form agreed to by both parties. It contained the overlapping elements of which Dependable now complains. In fact, Dependable agreed that all the elements were proper, and counsel permitted the court to direct a verdict as to the amounts. Failure of Dependable to object to the form of the verdict and the sums agreed to constitutes a waiver of all but fundamental errors.[1] Here the error (amounting to a maximum of $3,500.00) does not rise to that level.
The correctness of the compensatory and punitive damage awards turns upon whether Harris sufficiently established the prima facie tort of intentional infliction of emotional distress. Harris also attempted to plead and prove a cause of action based on Dependable's bad faith refusal to pay under its insurance policy. Harris justifies these awards based solely on the tort of intentional infliction of emotional distress.[2]
To establish a cause of action for the intentional infliction of emotional distress, four elements must be proven: (a) deliberate or reckless infliction of mental suffering; (b) outrageous conduct; (c) the conduct must have caused the emotional distress; and (d) the distress must be severe. Dominguez v. Equitable Life Assurance Society of the United States, 438 So.2d 58 (Fla. 3rd DCA 1983), approved, 467 So.2d 281 (Fla. 1985). All of these elements are met here.
In determining whether the element of "outrage" was sufficiently established to support the jury verdict, we must look at the evidence in the light most favorable to Harris.[3] In October of 1979, Harris applied for a loan at Florida Center Bank in Orlando, to purchase a new car. The loan officer solicited his purchase of a credit disability policy from Dependable. No physical examination or application was required by Dependable. The policy required Dependable to make car payments to the bank if Harris became totally disabled.
At the time the policy was issued, Harris was self-employed and relatively active. However, he was receiving $1,000.00 per month under a professional disability policy. By profession Harris had been a pharmacist, but due to polyneuropathy, a nerve condition affecting his legs, he was unable to work as a pharmacist because he could not stand for long periods of time. Dependable admitted this earlier, partial disability would not affect its liability for Harris' total disability if the total disability occurred after issuance of the policy and was due to a separate physical cause.
In December of 1979, while trimming a Christmas tree, Harris felt for the first time a sharp new pain in his back. Early in January he went to see his physician, Dr. Louis Murray, who diagnosed a severe degenerative disease of the spine, and declared him to be totally disabled. He prepared a report for Harris to submit to the Social Security Administration ("SSA"). At trial, Dr. Murray testified unequivocally that Harris' leg problems were not related in any way to Harris' degenerated spine, and that the latter condition had not been diagnosed until January of 1980.
Based on Dr. Murray's report and Harris' application, SSA processed Harris' claim. In order to extend to Harris maximum possible benefits, the SSA counselor issued an award certificate in January 1980 which made Harris' award retroactive to 1979.
Harris submitted Dr. Murray's medical report to Dependable, and called upon Dependable to honor its credit disability policy. Dependable made payments through July of 1981. At that time, Dr. Murray had been submitting medical reports to Dependable *987 on its claim forms, every two to three months, certifying that Harris' total disability was continuing.
In August, a new claims manager, Diana Clark, decided to challenge Harris' claim. She had no new or different information, but nevertheless stopped making payments to the bank. Shortly thereafter she employed an investigator from Equifax. Clark testified she was trying to decide whether or not to pay the car loan off in advance to avoid interest payments. Equifax erroneously advised Clark that Harris had been receiving total disability payments since 1976. However, Clark's own records show that her decision (agreed to by her supervisor) to stop payments under the policy was made prior to her receipt of the Equifax report.
At that point Clark and Harris communicated by letter and telephone. Harris told her the information was wrong. He voluntarily gave Dependable a copy of his Social Security award letter, showing a January 1980 award date.
Based on this information, Clark and her supervisor decided on September 21, 1981, that their rejection of Harris' claim could "stick" on the grounds that his total disability was based on a "pre-existing" condition. However they had absolutely no evidence to support this. Further, they made no additional inquiry of Dr. Murray, or the SSA office or counselor. Nor did they check into Harris' explanation about his professional partial disability policy. Instead, Clark undertook a vicious verbal attack on Harris.
On at least two occasions, Clark told Harris that he was a cheat and a fraud. She threatened to advise the SSA that he had defrauded the government by receiving disability payments if he persisted in his claim against Dependable. She contended she used to work with SSA, that she had "contacts" with them, and that they would come after him for repayment of all funds SSA had paid him. Clark also threatened to sue Harris to recover the payments Dependable had already made under the policy if he did not relinquish his claim. She said Dependable's "battery" of attorneys could outlast any attorney he might hire.
When Harris protested that without Dependable's disability payments he could not meet his financial obligations and that his automobile would be repossessed, Clark retorted that that was not her problem  Dependable was not a "welfare agency." As Harris described it, she was extremely nasty and vicious. At the time, Harris was in great pain, and too physically ill to work.
Harris experienced severe mental depression and distress as a result of Dependable's actions. This was established through the testimony of a psychiatrist and Harris' treating physician, Dr. Murray. Harris' car was repossessed by the bank, in front of his neighbors and friends. He was forced into bankruptcy. He testified his self-respect as a competent member of the community was shattered. He became severely depressed.
In the context of a suit on an insurance policy brought by an insurance beneficiary against the insurance company, the Florida Supreme Court adopted the Restatement (Second) of Torts definition of the tort of intentional infliction of emotional distress. Metropolitan Life Insurance Company v. McCarson, 467 So.2d 277 (Fla. 1985). Section 46 of the Restatement (Second) of Torts (1965) provides:
One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
However, in McCarson, the supreme court held that the conduct of the insurance company was not sufficiently outrageous, because the insurance company was merely insisting on its rights under the policy to receive proof the beneficiary was not eligible for medicare before commencing payment under the policy. It quoted with approval comment "g" to the Restatement:
The conduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances. The actor is never liable, for example, where *988 he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.
Id. at 279.
Whether or not the evidence at trial[4] or allegations of the complaint[5] sufficiently present conduct which is outrageous enough to rise to the level required by this tort appears to be a question of law.[6] This court has recently recognized the tort but held the factual scenario insufficient. Campbell v. Prudential Insurance Co., 480 So.2d 666 (Fla. 5th DCA 1985); Food Fair, Inc. v. Anderson, 382 So.2d 150 (Fla. 5th DCA 1980). In Campbell we held the insurance company's "mere negligence" in failing to pay a claim was not adequately outrageous, and in Anderson we emphasized that the wrongful conduct had to be extreme in degree, beyond all possible bounds of decent civilized behavior.
However, there is authority for the view that a heightened degree of outrageousness can be supplied by the unequal positions of the parties in a relationship which gives rise to the tort, where one asserts and has the power to severely damage the other.[7]
The extreme and outrageous nature of the conduct may arise not so much from what is done as from abuse by the defendant of some relation or position which gives the defendant actual or apparent power to damage the plaintiff's interests. The result is something very like extortion.
Prosser & Keeton, The Law Of Torts, § 12, at 61 (5th Ed. 1984). Successful actions have been prosecuted in this context based on outrageously high pressure tactics of collection agencies, other creditors, and insurance adjusters seeking to force an unfair settlement. Id. at 62; see Strader v. Union Hall, Inc., 486 F. Supp. 159 (N.D.Ill. 1980); Fletcher v. Western National Life Insurance Co., 10 Cal. App.3d 376, 89 Cal. Rptr. 78 (Cal. App. 4th Dist. 1970).
In addition, another factor recognized as enhancing the outrageousness of a defendant's conduct is the defendant's knowledge that the plaintiff is especially sensitive, susceptible, or vulnerable to injury caused by mental distress.[8] Comment "f" to section 46 of the Restatement (Second) of Torts provides:
f. The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know. It must be emphasized again, however, that major outrage is essential to the tort; and the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough.
Id. at 75.
This case involves a fact pattern which falls within the scope of the tort as *989 defined by section 46 of the Restatement (Second) of Torts and its comments. The conduct of Dependable in rejecting Harris' claim for disability payments was completely without any justification or reliance upon any legal defense. Compare, McCarson. Even at trial after the coverage issue had been finally determined, Dependable still refused to acknowledge its obligations to Harris, although it had no medical or contractual basis for doing so. Cf. Grafton v. Sacred Heart Hospital, 504 So.2d 537 (Fla. 1st DCA 1987).
Based on these facts, the jury could have concluded Dependable launched its vicious verbal attack against Harris (complete with threats of legal actions) in bad faith,[9] to frighten Harris from collecting the balance of his contract rights. This constitutes outrageous behavior on Dependable's part because of its fiduciary relationship with Harris, its economic strength and power, and Harris' sickness, pecuniary circumstances, and need for (and dependence upon) the disability payments which Dependable wrongfully withheld.[10]
This case is similar to the facts alleged in Dominguez v. Equitable Life Assurance Society of the United States, 438 So.2d 58 (Fla. 3rd DCA 1983), approved, 467 So.2d 281 (Fla. 1985), where our sister court held a cause of action for the intentional infliction of emotional distress was stated. In that case an insurance agent stopped disability payments after the plaintiff had received them from 1973 to 1979. With no medical reports, other information, or any basis for discontinuing the payments, the agent visited Dominguez and falsely told him he was no longer considered disabled, and that he had to release the policy. Dominguez's relinquishment of his contract rights was only prevented by the intervention of a relative.
Like Harris, Dominguez was particularly impotent and susceptible to the false statements and threats made by the insurance company. He was economically dependent upon the company's fulfillment of its contract obligations. But in this case, the injury suffered by Harris was much greater; and the accusations and threats made by the insurance agent were more extreme.
Dependable further argues that the trial court erred in awarding Harris attorney's fees of $56,250.00 under section 627.428, Florida Statutes (1985). It provides:
(1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.
In this case the record establishes that the attorney's fee award was based on the "actual" as well as the "compensatory" damage awards. As noted above, the compensatory award relates solely to the tort of intentional infliction of emotional distress.
Although the literal wording of the statute does not limit its application expressly to the contract or actual damage aspects of a suit, that is the interpretation it has received to date by the appellate courts in this state. In United Services Automobile Association v. Kiibler, 364 So.2d 57 (Fla. 3rd DCA 1978), the court restricted recovery of attorney's fees under this statute to those attributable to litigating the issues of insurance coverage, and disallowed fees to prosecute a tort claim against a third party. And in Charles Stewart Agency, Inc. v. Doisy, 399 So.2d 127 (Fla. 1st DCA 1981), a suit premised on misrepresentation or fraud against an insurance agent, the court held no attorney's fees were recoverable.
*990 Since in this case the court failed to differentiate between the attorney time and effort attributable to the tort suit for which the compensatory award was made, and the disability and actual damages, which involved coverage under the policy, we must remand to the lower court for apportionment of attorney's fees between the tort and contract awards. See Altamonte Hitch and Trailer Service, Inc. v. U-Haul Co. of Eastern Florida, 483 So.2d 852 (Fla. 5th DCA 1986).
Accordingly, we affirm the judgment in all regards, but we reverse the award of attorney's fees.
AFFIRMED IN PART; REVERSED IN PART.
UPCHURCH, C.J., and ORFINGER, J., concur.
NOTES
[1] Higbee v. Dorigo, 66 So.2d 684 (Fla. 1953); Papcun v. Piggy Bag Discount Souvenirs, Food & Gas Corp., 472 So.2d 880 (Fla. 5th DCA 1985); North American Catamaran Racing Assoc., Inc. v. McCollister, 480 So.2d 669 (Fla. 5th DCA 1985), review denied, 492 So.2d 1333 (Fla. 1986).
[2] Restatement (Second) of Torts § 46 (1965); see Ford Motor Credit Co. v. Sheehan, 373 So.2d 956 (Fla. 1st DCA), cert. dismissed, 379 So.2d 204 (Fla. 1979); Cape Publications, Inc. v. Bridges, 387 So.2d 436 (Fla. 5th DCA 1980).
[3] Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277 (Fla. 1985); Smith v. Telophase Nat'l Cremation Soc'y, Inc., 471 So.2d 163 (Fla. 2d DCA 1985); Reams v. Vaughn, 435 So.2d 879 (Fla. 5th DCA 1983).
[4] Food Fair Stores, Inc. v. Morgan, 338 So.2d 89 (Fla. 2d DCA 1976); Smith v. Telophase Nat'l Cremation Soc'y, Inc., 471 So.2d 163 (Fla. 2d DCA 1985).
[5] Lay v. Roux Laboratories, Inc., 379 So.2d 451 (Fla. 1st DCA 1980); Estate of Morton v. U.S. Fidelity & Guar. Co., 460 So.2d 526 (Fla. 4th DCA 1984).
[6] See Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277 (Fla. 1985); Kirkpatrick v. Zitz, 401 So.2d 850 (Fla. 1st DCA), dismissed, 411 So.2d 385 (Fla. 1981).
[7] The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests. Thus an attempt to extort money by a threat of arrest may make the actor liable even where the arrest, or the threat alone, would not do so. In particular police officers, school authorities, landlords, and collecting creditors have been held liable for extreme abuse of their position. Even in such cases, however, the actor has not been held liable for mere insults, indignities, or annoyances that are not extreme or outrageous.
Restatement (Second) of Torts, § 46, at 74 (1965).
[8] Prosser & Keeton, The Law of Torts, § 12 at 61 (5th Ed. 1984); see Continental Casualty Co. v. Garrett, 173 Miss. 676, 161 So. 753 (1935).
[9] Cf. Grafton v. Sacred Heart Hospital, 504 So.2d 537 (Fla. 1st DCA 1987).
[10] See Holmes v. Oxford Chemicals, Inc., 510 F. Supp. 915 (M.D.Ala. 1981), aff'd, 672 F.2d 854 (11th Cir.1982).