682 So.2d 1119 (1996)
Anna and Peter PAUL, Appellants,
v.
HUMANA MEDICAL PLAN, INC., a Florida corporation, Sanford Karsh, M.D., and Andrew Richman, M.D., Medical Management Associates of Tamarac, Inc., d/b/a McNab Medical Center, Appellees.
No. 94-0664.
District Court of Appeal of Florida, Fourth District.
September 18, 1996.
Rehearing Denied November 25, 1996.
*1120 Dan Cytryn, P.A. Tamarac, and Russell S. Bohn of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for appellants.
Clark J. Cochran, Jr. of Billing, Cochran, Heath, Lyles & Mauro, P.A., Fort Lauderdale, for AppelleeMedical Management Associates of Tamarac, Inc. d/b/a McNab Medical Center.
Esther E. Galicia of George, Hartz, Lundeen, Flagg & Fulmer, Fort Lauderdale, for AppelleesSanford Karsh, M.D., and Andrew Richman, M.D.
DELL, Judge.
Anna and Peter Paul appeal from an order dismissing with prejudice all counts of their third amended complaint against Dr. Sanford Karsh.[1] As to Dr. Karsh, we reverse the dismissal with prejudice of the medical malpractice claim and affirm the dismissal of the intentional infliction of emotional distress claim.
The Pauls alleged the following facts in their third amended complaint. Medical Management Associates of Tamarac, Inc., d/b/a McNab Medical Center (McNab) affiliated with Humana Medical Plan, Inc. and other Humana organizations (Humana) to provide medical services to Humana members. Humana paid McNab a monthly capitation fee or a set sum for each Humana patient who visited McNab. The Pauls belonged to Humana and Mrs. Paul chose McNab as her primary care provider with Dr. Karsh as her assigned physician. Having chosen McNab, Mrs. Paul alleged she could not seek treatment from other medical providers without McNab's consent.
Dr. Karsh and Dr. Richman operated and had an ownership interest in McNab. Dr. Karsh held himself out to the public as a specialist in the field of internal medicine and represented himself to Mrs. Paul as one skilled, knowledgeable and qualified to undertake the medical care and treatment she required. Dr. Karsh examined, treated and cared for her within his specialized field.
On January 5, 1989, Mrs. Paul sought treatment at McNab for chronic hoarseness and pain in the left side of her neck and in her left ear. Dissatisfied with McNab's treatment and failure to refer her to an ear, nose and throat (E.N.T.) specialist, Mrs. Paul visited a private internist who immediately diagnosed cancer of the larynx. Mrs. Paul subsequently visited her personal physician in New York who referred her to a surgeon who recommended immediate surgery. McNab refused to authorize the emergency surgery.
Mrs. Paul returned to Florida on January 19, 1989 and visited McNab to request a referral to an E.N.T. specialist. McNab told her that the referral would take approximately four weeks. Two days later, Mrs. Paul began having difficulty breathing. Mr. Paul and her brother took her to the Emergency Room at Humana HospitalBennett. Mrs. Paul's brother had called McNab to ask where to take her but was not so advised. However, Mrs. Paul was later transferred by ambulance to Humana HospitalCypress with which McNab had an association. Her admission was apparently delayed when Dr. Karsh argued with her about why her family had taken her to Humana HospitalBennett.
On February 13, 1989, Mrs. Paul was again admitted to the hospital for a total laryngectomy with a left functional neck dissection and insertion of an endotracheal tube. She was discharged on February 23, 1989, one day earlier than her surgeon, Dr. Rojas, had recommended.
On February 24, 1989, Mr. Paul called McNab to request that his wife be admitted to the emergency room as she was suffering from constant nausea and vomiting. McNab said that Mrs. Paul would first be required to visit the medical center to obtain a referral, which she did not do. On February 25, 1989 at 2:00 a.m., Mr. Paul called Dr. Rojas, who instructed Mrs. Paul to come to the Humana HospitalCypress Emergency Room. When *1121 she arrived, the hospital telephoned Dr. Karsh for authorization to admit her. Dr. Karsh refused to authorize her admission. As a result, Dr. Rojas admitted Mrs. Paul and found that a fistula, an infection, had developed at the surgical site. Dr. Rojas also allegedly found a cervical abscess with out-of-control diabetes and infection. Appellants claimed that the early discharge on February 23rd resulted in the emergency hospitalization on February 25th and the infection at the surgical site.
Mrs. Paul was discharged on February 27, 1989 with instructions for her husband to clean the surgical site and feed her through a nasogastric tube even though appellants told Dr. Karsh and Dr. Richman that Mr. Paul was physically and emotionally unable to clean the oozing wound. Appellants alleged that Mrs. Paul was again discharged prematurely when Dr. Karsh and Dr. Richman "exerted pressure" on the hospital and Dr. Rojas. Appellants claimed financial considerations motivated the doctors who wanted to avoid incurring additional expenses for Mrs. Paul's hospitalization and treatment. Additionally, appellants claimed the doctors acted with extreme and outrageous conduct in failing to provide Mrs. Paul with adequate medical care and that they intentionally refused to render medical care and treatment with the knowledge that doing so would result in their increased profits and in Mrs. Paul's emotional distress. As a result, appellants said Mrs. Paul suffered severe emotional distress.
Based on the foregoing facts, appellants alleged that Dr. Karsh breached his duty of care to Mrs. Paul by failing to: properly treat her; employ necessary diagnostic procedures; obtain necessary medical specialists for her condition; provide her with proper, timely and adequate medical care and hospitalization; hospitalize her for a reasonable period of time to insure proper recovery; and authorize required treatment.
Appellants' allegations, if proved, would establish that Dr. Karsh breached his duty of care by failing to diagnose Mrs. Paul's condition and by failing to refer her to an E.N.T. specialist after she was diagnosed with cancer. The complaint also stated that Dr. Karsh prematurely discharged Mrs. Paul on February 23, 1989, which resulted in an infection at the surgical site. Furthermore, appellants claimed that Dr. Karsh failed to provide Mrs. Paul with sufficient care when he discharged her on February 27, 1989 with instructions for her husband to care for her, which failure resulted in Mrs. Paul returning two days later vomiting everything she swallowed through her nasogastric tube.
We hold that Count I of appellants' third amended complaint stated a cause of action for medical negligence against Dr. Karsh. See generally Hoelterhoff v. Vigderman, 375 So.2d 575 (Fla. 2d DCA 1979); Gill v. Hartford Accident and Indem. Co., 337 So.2d 420 (Fla. 2d DCA 1976); Balbontin v. Porias, 215 So.2d 732 (Fla.1968).
We affirm the trial court's dismissal with prejudice of appellants' claim for intentional infliction of emotional distress against Dr. Karsh on the authority of Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277 (Fla.1985). In Metropolitan, the supreme court approved this court's opinion in Metropolitan Life Ins. Co. v. McCarson, 429 So.2d 1287 (Fla. 4th DCA 1983), approved in part, quashed in part, 467 So.2d 277 (Fla.1985) wherein we adopted section 46 of the Restatement (Second) of Torts as the appropriate definition of the tort of intentional infliction of emotional distress. The supreme court pointed out, however, that the Fourth District did not conform its findings to the Restatement comments explaining the application of this definition. Specifically, the supreme court referred to Comment d.:
d. Extreme and outrageous conduct....
It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in *1122 which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
Metropolitan, 467 So.2d at 278-79 (quoting Restatement (Second) of Torts § 46 (1965)).
Applying the standard of extreme and outrageous conduct announced in Metropolitan to the facts alleged in appellants' third amended complaint, we hold that the trial court did not err when it dismissed with prejudice appellants' claim for intentional infliction of emotional distress. This court has consistently held that it is for the trial court "to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." Scheller v. American Medical Int'l, Inc., 502 So.2d 1268, 1271 (Fla. 4th DCA), rev. denied, 513 So.2d 1060 (Fla. 1987), appeal after remand, 590 So.2d 947 (Fla. 4th DCA 1991), rev. dismissed, 602 So.2d 533 (Fla.1992); Rushing v. Bosse, 652 So.2d 869 (Fla. 4th DCA 1995); Fridovich v. Fridovich, 573 So.2d 65 (Fla. 4th DCA 1990), rev. cert. question, 598 So.2d 65 (Fla.1992). See also Lay v. Roux Lab., Inc., 379 So.2d 451 (Fla. 1st DCA 1980), appeal after remand on other grounds, 411 So.2d 1347 (Fla. 1st DCA 1982); Swan v. St. Thomas Univ., 592 So.2d 351 (Fla. 3d DCA 1992); Dependable Life Ins. Co. v. Harris, 510 So.2d 985 (Fla. 5th DCA 1987); McAlpin v. Sokolay, 596 So.2d 1266 (Fla. 5th DCA 1992); Watson v. Bally Mfg. Corp., 844 F.Supp. 1533 (S.D.Fla.1993), aff'd, 84 F.3d 438 (11th Cir. 1996); Golden v. Complete Holdings, Inc., 818 F.Supp. 1495 (M.D.Fla.1993).
Accordingly, we reverse the dismissal with prejudice of appellants' medical negligence claim as it relates to Dr. Karsh and remand this case for further proceedings. We affirm the trial court's dismissal with prejudice of appellants' claim for intentional infliction of emotional distress.
AFFIRMED IN PART, REVERSED IN PART and REMANDED.
RIVKIND, J., concurs.
GUNTHER, C.J., dissents with opinion.
GUNTHER, Chief Judge, dissenting with opinion.
I respectfully dissent from that portion of the majority opinion which affirms the trial court's dismissal of the Pauls' claim for intentional infliction of emotional distress.
In 1985, the Florida Supreme Court expressly recognized the independent tort of intentional infliction of emotional distress. Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277 (Fla.1985). In McCarson, the supreme court adopted the tort as set forth in section 46, Restatement 2d of Torts (1965), which states:
(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
The necessary elements of an intentional infliction of emotional distress claim are: (1) the defendant's conduct was deliberate or reckless; (2) the conduct was outrageous; (3) the conduct caused the emotional distress; and (4) the emotional distress was severe. Dependable Life Ins. Co. v. Harris, 510 So.2d 985, 986 (Fla. 5th DCA 1987); Restatement (Second) of Torts, § 46 (1965). Importantly, outrageous conduct is that which exceeds all possible bounds of decency. Restatement (Second) of Torts, § 46 cmt. d, (1965).
In the instant case, the Pauls alleged all four of the above elements in count eight of the third amended complaint. Nevertheless, the trial court dismissed this count for failing to state a cause of action. Presumably, the grounds for the dismissal was the interpretation of section 46, comment h of the Restatement of Torts. This section specifically provides:

h. Court and jury. It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.
*1123 Restatement (Second) of Torts § 46 cmt. h (1965). This Court, and its sister courts, have repeatedly held that the trial court can make this initial determination of outrageousness as a matter of law at the motion to dismiss stage. See Scheller v. American Medical Int'l, Inc., 502 So.2d 1268 (Fla. 4th DCA), rev. denied, 513 So.2d 1060 (Fla.1987); Anderson v. Rossman & Baumberger, P.A., 440 So.2d 591 (Fla. 4th DCA 1983), rev. denied, 450 So.2d 485 (Fla.1984); Dependable Life Ins. Co. v. Harris, 510 So.2d 985 (Fla. 5th DCA 1987); Peacock v. General Motors Acceptance Corp., 432 So.2d 142 (Fla. 1st DCA 1983); Lay v. Roux Labs., Inc., 379 So.2d 451 (Fla. 1st DCA 1980). In Scheller, this court stated:
With regard to the sufficiency of the allegation to state a cause of action, it is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. Restatement (Second) of Torts § 46, Comment h.
Scheller, 502 So.2d at 1271. However, for the following reasons, I believe that the above cases have misinterpreted comment h of section 46.
Initially, it must be noted that nothing in comment h suggests that the trial court's determination be made at the motion to dismiss stage. Rather, if comment h is read in its entirety, the more reasonable and logical time for the trial court's initial outrageousness determination is at the directed verdict stage, or at the very least, the summary judgment stage as the comment discusses submitting the case to the jury. Moreover, it simply makes judicial sense for the trial court to assess the defendant's conduct as proved by the evidence, rather than as alleged in the complaint. Complaints are most often pled in the most general terms while the evidence adduced at summary judgment or at trial is specific to the defendant. Additionally, nothing in the rules of civil procedure requires a plaintiff to plead a claim for intentional infliction of emotional distress with particularity or specificity. See Fla. R.Civ.P. 1.140. A complaint, as a pleading, is merely a tentative outline of the position which the pleader takes before his case is fully developed on the facts through discovery and evidence. Metcalf v. Langston, 296 So.2d 81, 85 (Fla. 1st DCA), cert. denied, 302 So.2d 414 (Fla.1974).
The proper interpretation of section 46, comment h, in my view, was utilized in the case of Sullivan v. deColigny, 432 F.Supp. 689 (V.I.Dist.1977). In Sullivan, the plaintiff sued the defendants alleging, inter alia, damages due to outrageous conduct causing severe emotional distress. 432 F.Supp. at 690. The defendants moved for a judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. In interpreting comment h of section 46, the Sullivan court concluded that it was premature to determine the outrageousness of the defendants' conduct. Id. Specifically, the court stated:
Although the Restatement of Torts, Second § 46 contemplates atrocious and intolerable conduct in order to establish said cause of action, and provides that the Court must preliminarily ascertain whether the defendants' conduct is of such an outrageous nature as to permit recovery, the Court cannot, at this stage in the instant proceedings rule that the conduct alleged in the complaint is not actionable under § 46 of the Restatement. The Court will permit the respective parties to proceed to trial and to introduce whatever evidence they may wish to offer before determining whether the alleged conduct of defendants was of such a nature as to warrant submitting the issue of liability to the jury.
Id. Thus, the Sullivan court determined that the initial trial court determination should be made at the directed verdict stage after considering the evidence, rather than merely looking at the conduct alleged in the complaint. See Moolenaar II v. Atlas Motor Inns, Inc., 616 F.2d 87 (3d Cir.1980)(before instructing jury on claim of intentional infliction of emotional distress, the trial court should determine, in the first instance, whether the plaintiff has established that the conduct complained of could reasonably be regarded as so extreme and outrageous as to permit recovery).
*1124 Accordingly, I conclude that a trial court should make its initial outrageousness determination at the stage when it can measure the defendant's conduct based on the evidence adduced rather than on the mere allegations of the complaint. As such, I would recede from Scheller v. American Medical International, Inc., 502 So.2d 1268 (Fla. 4th DCA), rev. denied, 513 So.2d 1060 (Fla.1987), and Anderson v. Rossman & Baumberger, P.A., 440 So.2d 591 (Fla. 4th DCA 1983), rev. denied, 450 So.2d 485 (Fla.1984), to the extent that they are inconsistent with this position. Additionally, I would necessarily certify conflict with Dependable Life Insurance Co. v. Harris, 510 So.2d 985 (Fla. 5th DCA 1987), Peacock v. General Motors Acceptance Corp., 432 So.2d 142 (Fla. 1st DCA 1983), and Lay v. Roux Laboratories, Inc., 379 So.2d 451 (Fla. 1st DCA 1980).
In the instant case, therefore, I would reverse the trial court's dismissal of the Pauls' intentional infliction of emotional distress claim.
In all other respects, I agree with the majority opinion.
NOTES
[1] We sua sponte dismiss the appeal as it relates to appellees Dr. Andrew Richman and Medical Management Associates of Tamarac, Inc., d/b/a McNab Medical Center (McNab) because interrelated claims are still pending against the same. See generally Palm Beach Newspapers, Inc. v. Walker, 506 So.2d 39 (Fla. 4th DCA 1987).