**Willie M. COLEMAN, Plaintiff,**

v.

**CLARK OIL AND REFINING CO., DIVISION OF APEX ACQUISITION, INC., Defendant.**

Civ. A. No. 81–C–1599.

United States District Court, E.D. Wisconsin.

July 26, 1983.

Arthur Heitzer, Milwaukee, Wis., for plaintiff.

Paul J. Gossens, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

The plaintiff, Willie M. Coleman, filed the *pro se* complaint in this action on December 18, 1981, alleging that his former employer, Clark Oil and Refining Co., discriminated against him on the basis of his age and his race by denying him promotional opportunities and by terminating his employment. Having obtained counsel, the plaintiff filed a First Amended Complaint asserting jurisdiction in this court on the basis of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and 42 U.S.C. § 1981. Presently before the court is the defendant's motion for summary judgment. The defendant seeks judgment as a matter of law on the grounds that the plaintiff's suit is time-barred. For the purposes of the pending motion, the affidavits on record reveal the following facts to be material.

Willie M. Coleman is a forty-three year old black citizen of Wisconsin. On October 8, 1973, he became a station manager at the defendant's service station at 2100 North Holton in the City of Milwaukee. In August of 1979, the plaintiff submitted a resume to District Sales Manager Larry Klingerman for promotion to the position of retail sales representative. Coleman was passed over for promotion and three white men were hired. Randy Johnson had been rehired on April 4, 1979 while he was 27 years of age. In September, 1979, Martin M. Richter, age 21, and Steven Hodach, age 27, were hired to fill the remaining vacancies. The plaintiff has sworn without contradiction by the defendant that he was never directly notified of these hiring decisions, and he did not learn that the vacancies were filled until he was introduced to his new sales representative, Steven Hodach, sometime during the "last half of February to early March 1980."

On March 2, 1980, Coleman requested and was permitted to transfer to another of the defendant's stations at 4057 North Green Bay Avenue. He requested the transfer because of alleged "continual harassment by Mr. Hodach" and the plaintiff's white supervisors. About October 21, 1980, the defendant announced that it soon would close several of its stations. Mr. Coleman's station on Green Bay Avenue was closed on November 12, 1980.

Following the decision to close his station, the plaintiff was given the option of working for two weeks to close other stations at a managerial level and then later assuming the position of an assistant manager until another station manager position opened. He opted instead to take two weeks of unused vacation time and then assume what he hoped would be a temporary lay-off status until a station manager position became available. Coleman alleges that he

was informed of station manager vacancies at several nearly all white suburbs when in fact two positions were available in racially mixed neighborhoods closer to the plaintiff's residence.

On December 5, 1980, the plaintiff applied for unemployment compensation benefits. Shortly thereafter he learned that his employer had taken the position that he had quit his job. Coleman filed a charge of promotional discrimination on December 8, 1980, as amended on January 27, 1981, to include a claim of discriminatory termination. The charges were referred to the Wisconsin Equal Rights Division for substantive investigation. On May 19, 1981, the state Equal Rights Division concluded its investigation, finding no probable cause to believe that discrimination had taken place. The plaintiff received a "Notice of Right to Sue" from the EEOC on September 21, 1981. This action was commenced on December 18, 1981.

 At issue in this case is whether the defendant is entitled to a judgment of dismissal on the plaintiff's ADEA and Title VII claims because his administrative charges of discrimination were not brought within 300 days after the allegedly unlawful employment practice, as required by statute.[1] *See* 29 U.S.C. § 626(d)(2); 42 U.S.C. § 2000e–5(e). The record makes clear that Mr. Coleman's claim of discriminatory discharge is timely under both the ADEA and Title VII. Even if Coleman's discharge is understood as having occurred as early as November 14, 1980, when the plaintiff elected to begin using his vacation time and thereafter to assume a lay-off status,[2] this allegedly unlawful act of discharge took place less than 80 days before the EEOC charge was filed on January 27, 1981.

 Whether the plaintiff's claim of discriminatory denial of promotion was timely filed is a much closer question. The plaintiff applied for promotion to the position of retail sales representative in August, 1979. Three men ultimately were hired to fill vacancies in that position. Randy Johnson had been hired on April 4, 1979; Martin M. Richter and Steven Hodach were hired in September, 1979. Mr. Hodach became the plaintiff's new sales representative, and it was not until the "last half of February to early March 1980," when the plaintiff was introduced to Mr. Hodach, that the plaintiff discovered he had been passed over for promotion.

The filing of timely charges of discrimination with the EEOC is not a jurisdictional predicate to actions under the ADEA or under Title VII. Rather, it is a requirement that is subject to equitable modification when necessary to effect the remedial purposes of the statute. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Kephart v. Institute of Gas Technology,* 581 F.2d 1287, 1289 (7th Cir.1978).

 In the circumstances of this case, equitable considerations require that the statutory filing periods begin to run only when the essential facts supportive of a Title VII or ADEA claim are or should be apparent to a reasonably prudent person similarly situated. *See Hamilton v. General Motors Corp.,* 606 F.2d 576, 579 (5th Cir. 1979); *Carpenter v. Board of Regents of the University of Wisconsin System,* 529 F.Supp. 525, 531 (W.D.Wis.1982). The retail sales representative positions sought by the plaintiff in this action were filled by September, 1979. The defendant, however, does not dispute the plaintiff's factual assertion that the plaintiff first became

---

1. The claim of race discrimination under 42 U.S.C. § 1981 is clearly within the applicable six year statute of limitations period. *See Hardy v. Ladish Co.,* No. 81–C–1435 (Magis.Ct.E.D. Wis. April 5, 1983); *Minor v. Lakeview Hospital,* 421 F.Supp. 485, 487 (E.D.Wis.1976).

2. The date of an "alleged unlawful practice" should be construed favorably to the complain-

ing party. The statutory period begins when the employee knows, or as a reasonable person should know, that the employer has made a final decision to terminate him, and the employee ceases to render further services to the employer. *See Downie v. Electric Boat Division,* 504 F.Supp. 1082, 1084 (D.Conn.1980) (ADEA construed).

aware of his promotion denial in February or March, 1980. I therefore conclude that the time for filing charges of promotional discrimination began to run against the plaintiff no earlier than the "last half of February," 1980.

Both Title VII and the ADEA require that, in states such as Wisconsin having an agency empowered to act upon charges of employment discrimination, aggrieved persons must file the discrimination charges with the EEOC within 300 days after the alleged unlawful act. *See* 42 U.S.C. § 2000e–5(e); 29 U.S.C. § 626(d)(2). The plaintiff filed his charge of promotional discrimination with the EEOC on December 8, 1980. Apparently pursuant to its deferral policy, 29 C.F.R. §§ 1601.13(4), (5)(i) (1982), the EEOC referred the charge to the Wisconsin Equal Rights Division for substantive investigation. The state's investigation was completed on May 19, 1981 with a finding of "no probable cause." If it is assumed that the plaintiff's filing period began to run as early as February 14, 1980, then 297 days had elapsed before charges of discrimination were filed.[3]

■ Although the plaintiff's initial discrimination charge was brought within the 300 day period, the timeliness requirement is not quite so simple. Within the timeliness requirements of Title VII and the ADEA resides an important policy intended to afford state agencies an opportunity to redress the evil at which the legislation was aimed and to avoid federal intervention unless its need was demonstrated. To serve this goal, the statutes confer upon state agencies an exclusive right to process discrimination charges for 60 days, during which time federal charges may not be brought.[4] *See* 42 U.S.C. § 2000e–5(c); 29 U.S.C. § 633(b).

In order to reconcile this 60 day deferral period with the 300 day filing period, the Supreme Court held that a plaintiff must commence his state administrative action within 240 days of the unlawful act in order to ensure that the state has its full 60 days to consider the charge and to permit a subsequent EEOC proceeding to be commenced within the 300 day period. *Mohasco Corp. v. Silver,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980).[5] Thus, when a complainant initially brings charges of discrimination before the EEOC and that Commission defers the complaint to the appropriate state agency for investigation, the complaint is not deemed to be filed with the EEOC until either the expiration of 60 days after the agency deferral or termination of the state proceeding, whichever is earlier. *See* 29 C.F.R. § 1601.13(5)(ii)(B) (1982).

In accordance with the *Mohasco* decision,[6] Mr. Coleman's EEOC charges are not considered to be filed until 60 days after the EEOC's December 8, 1980 deferral to the Wisconsin Equal Rights Division. The plaintiff thus is deemed to have filed his

---

3. Assuming that the plaintiff was not put on notice of the discriminatory act until as late as March 10, 1980 ("early March"), then 273 days would have elapsed before charges were filed.

4. Federal charges may be filed within this 60 day period if the state proceeding terminates before such period expires.

5. Although *Mohasco* involved an interpretation of Title VII, the holding should be applied with like force to the ADEA, 29 U.S.C. § 633(b). *See Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979).

6. The plaintiff insists that it would be inequitable to apply the *Mohasco* holding to the facts of this case. *Mohasco* was decided on June 23, 1980, after the plaintiff learned of the alleged discrimination. Moreover, Mr. Coleman was without legal representation until well after this federal court action was commenced.

I understand the predicament of an uncounseled plaintiff who attempts to comprehend the *Mohasco* decision in determining how quickly he must act. The Supreme Court, however, considered and expressly rejected an argument based upon the fairness of its decision to lay victims of discrimination. Timeliness requirements, by their nature, tend to be unfair to the plaintiffs. Nevertheless, I feel bound to accept the *Mohasco* decision and to afford it full prospective application to this case. Although I doubt whether the ruling should be applied retroactively, *see Wiltshire v. Standard Oil Company of California,* 652 F.2d 837, 842 (9th Cir.1981), in this case Mr. Coleman submitted his claims of discrimination to the EEOC and the WERD nearly six months after the Supreme Court announced its new rule.

EEOC charges on February 6, 1981, which is between 333 and 357 days after the plaintiff was put on notice of the discriminatory conduct. The charge of promotional discrimination therefore was not timely filed within the statutory 300 day period.

■ The plaintiff nevertheless asserts that the defendant's failure to promote him in September of 1979 is part of a continuing violation that extended into the 300 day filing period. Specifically, it is alleged that on or about November 14, 1980, the plaintiff met with the defendant's Milwaukee area district manager to discuss the plaintiff's employment status following the closing of his service station. The plaintiff declined a lesser position of assistant manager and instead opted for a lay-off status until another station manager position became available. The plaintiff alleges that the defendant company, between September 11 and December 11, 1980, filled four vacancies at the level of service station manager with white males younger than the plaintiff. None of these vacancies was disclosed to the plaintiff and none of the positions was offered to him. The plaintiff also learned subsequent to his meeting in November, 1980, that station manager positions available in integrated neighborhoods were offered to other black employees less experienced than he and less outspoken regarding matters of apparent racial discrimination.

Apart from the discrete acts of promotional discrimination alleged to have continued into the 300 day filing period, the plaintiff apparently also alleges that the defendant has maintained a covert practice of racial discrimination that existed throughout 1980. In particular, the plaintiff states that he was subjected to racial harassment by his immediate supervisor, Mr. Hodach. Further, on October 10, 1980, the defendant terminated its only black retail sales representative, thus eliminating all black employees above the level of station manager. Moreover, the plaintiff asserts that in November, 1980, the defendant closed all of its stations managed by black employees, including the plaintiff's station.

In short, the plaintiff contends that his promotional discrimination claim is a continuing violation which extends into the statutory filing period and thus is not time-barred.

The continuing violation theory is now a well-recognized tool for adding flexibility to the timeliness requirements of federal employment discrimination law. See Carty, *The Continuing Violation Theory of Title VII After United Air Lines, Inc. v. Evans,* 31 Hastings L.J. 929, 931–32 (1980). If a series of discrete acts of discrimination continues into the statutory filing period, then the cause of action is considered timely filed. Discriminatory acts occurring prior to this period constitute relevant evidence of a continuing unlawful practice, may help to demonstrate the defendant's discriminatory intent, and will be used to determine the appropriate remedy. See *Stewart v. CPC International, Inc.,* 679 F.2d 117, 121 (7th Cir.1982).

■ Before a violation will be deemed continuing, however, the court must find a "present violation"—that is, the plaintiff must demonstrate that at least one discriminatory act occurred within the filing period. It is not sufficient for the plaintiff simply to allege that he presently suffers the effects of past discrimination. Moreover, once an employment relationship is severed permanently due to discharge, any continuing violation terminates as to that individual employee. *United Air Lines v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

Although discharges may not form the basis for a continuing violation, the theory has been applied to repeated denials of promotion when, despite an employee's expression of continued interest in promotion, the record demonstrates repeated promotions of others in preference to the complainant. See *Verzosa v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 589 F.2d 974, 976–77 (9th Cir.1978); *Moore v. Sunbeam Corp.,* 459 F.2d 811, 827–28 (7th Cir.1972).

■ In the instant action, the plaintiff adequately states a continuing violation

that extends into the 300 day period immediately preceding his December 8, 1981 discrimination charge. Although that continuing failure to promote must terminate upon the plaintiff's discharge in November or early December, 1980, the record at this stage demonstrates that on at least four occasions between September 11 and December 11, 1980, white males younger than the plaintiff were given station manager positions in preference to the plaintiff.

It is of no consequence that the plaintiff's promotion denials in 1979 were for the retail sales representative position whereas in 1980 he was passed over for reassignment as a service station manager. In both instances the plaintiff's overall upward mobility within the organization was impaired allegedly on the basis of his age and his race; it matters little that the denials of advancement opportunities were for differing positions. *See Cedeck v. Hamiltonian Federal Savings & Loan Ass'n,* 551 F.2d 1136, 1137 (8th Cir.1977).

I therefore conclude that the plaintiff's claim of promotional discrimination is sufficient to allege a continuing violation, evidenced by an ongoing series of discrete acts—a denial of promotion to the position of retail sales representative, discovered by the plaintiff in February, 1980, and refusals to reassign the plaintiff to the position of station manager between September and December, 1980, in the context of an alleged covert policy to rid the company of its higher level black employees. This continuing violation extends within the statutory 300 day filing period, thus rendering the charge of promotional discrimination timely under Title VII and the ADEA.

I have concluded likewise that neither the plaintiff's section 1981 cause of action nor his charges of wrongful discharge under Title VII and the ADEA are time-barred.

THEREFORE, IT IS ORDERED that the defendant's motion for summary judgment is denied.