**William W. PUCCI and Valerie J. Pucci, individually and as husband and wife, Plaintiffs,**

**v.**

**USAIR, a Delaware corporation authorized to do business in Florida, Defendant.**

No. 96–353–CIV–T–17E.

United States District Court, M.D. Florida, Tampa Division.

Sept. 27, 1996.

James Garrity, Law Office of James Garrity, Tampa, FL, for plaintiffs.

Vasilis C. Katsafanas, Jackson, Lewis, Schnitzler & Krupman, Orlando, FL, for defendant.

## ORDER ON MOTION TO DISMISS, MOTION FOR A MORE DEFINITE STATEMENT, AND MOTION TO STRIKE

KOVACHEVICH, Chief Judge.

This cause is before the Court on the following motions and responses:

Dkt. 8, 9 Defendant's Motions to Dismiss Counts I, II, III, IV and V of the Complaint, alternatively for a more definite statement with regard to Count V of the Complaint, for a more definite statement with regard to Count VI of the Complaint, for a more definite statement with regard to the entire Complaint, and to strike claims for lost wages, back pay, lost benefits, and loss of future employment as to Counts I, II, III, IV, V, and VI of Plaintiffs' Complaint, and Memorandum.

Dkt. 10 Plaintiffs' Response Memorandum

This suit was originally filed in state court, the Thirteenth Judicial Circuit Court of Hillsborough County. The state court complaint alleged that Mrs. Pucci is a former employee of USAIR, that USAIR created an extraordinarily hostile, sexually-poisoned work atmosphere for Mrs. Pucci, and that USAIR purposely exposed Mrs. Pucci to vile acts of depravity, rather than take simple and cost-effective measures to stop the harassment. The Complaint contains the following causes of action: 1) intentional infliction of emotional distress; 2) battery; 3) assault; 4) loss of consortium; 5) tortious invasion of privacy; and 6) negligence.

On February 20, 1996, USAIR filed a notice of removal of the case to federal court. The notice asserted that the Court had original jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. Section 1332 and 28 U.S.C. Section 1441.

On or about December 1, 1988, USAIR hired Mrs. Pucci. She was first hired to work at USAIR's Baltimore, Maryland facility as the District Sales Secretary. Later, Mrs. Pucci requested and received a transfer to the Orlando, Florida Maintenance Department as an Intermediate Clerk. The Orlando Maintenance Department was accessible to those with a special security badge only.

Mrs. Pucci was the only female working on her shift at the Orlando Maintenance Department. Upon Mrs. Pucci's initial meeting with Supervisor Charles M. Adams, he warned her that she would be exposed to profane language as USAIR's employees did not know how to act around female coworkers. Due to her family finances, Mrs. Pucci felt she had no choice but to continue her employment.

Mrs. Pucci's initial work area was outside Supervisor Adams' office, among the general male maintenance employee traffic. Mrs. Pucci was subjected to foul language, displays of male employees belching and passing gas in front of her desk, and cutout pictures from a pornographic magazine being placed on her desk. Mrs. Pucci showed the photographs to Supervisor Adams, who seized and destroyed them.

Later, Mrs. Pucci found more pornographic pictures on her desk. She showed the photograph to Supervisor Adams, who again seized and destroyed them. Supervisor Adams apologized to Mrs. Pucci and explained to her that USAIR employees did not know how to act around female employees.

On a separate occasion, Mrs. Pucci found more pornographic pictures placed throughout her desk. Mrs. Pucci showed the pictures to Supervisor Adams. Despite his constant request, Mrs. Pucci would not give Supervisor Adams the pictures for fear that he would destroy them. Mrs. Pucci begged Supervisor Adams to take action against those responsible for the acts. A few days later, Mr. Narzakewich, a USAIR Supervisor, held a meeting with the maintenance personnel about sexual harassment, and stated USAIR's intolerance to such behavior.

Mrs. Pucci continued to find more pornographic photographs on her desk. She contacted Mr. Narzakewich's secretary to discuss her findings, and was assured that Mr. Narzakewich would be informed. Mrs. Pucci changed her working hours in an unsuccessful effort to prevent employees from tampering with her desk, and placing pornographic photographs into the desk. Mrs. Pucci contacted Mr. Narzakewich's supervisor, Mr. Tom McMullen, and informed him of the sexual harassment she was experiencing.

Ten months after Mrs. Pucci began working in the Orlando Maintenance Department, her desk was moved into the secured office of USAIR Maintenance Foreman, Rodney Whitfield. This office was kept locked when not in use, and a key was given to Mrs. Pucci. Mrs. Pucci felt her work environment had resembled a cage, and not an office.

Mrs. Pucci was exposed to various forms of harassment. Having a known fear of bugs, Mrs. Pucci arrived to work one day to find two live grasshoppers in her desk. The incident upset and frightened her. Mrs. Pucci found a "Do Not Disturb" sign from a hotel hanging on her office door. Inside her office, she found, "B.J. Goodard. Sick—Due to lack of blow jobs from Valerie" on the attendance board. Mrs. Pucci contacted headquarters, and requested a transfer, but was told nothing was available.

USAIR security contacted Mrs. Pucci and assured her that surveillance cameras would be placed in her office in an effort to discover the perpetrator(s). However, USAIR never installed such cameras or other surveillance methods.

Other incidents which occurred include: 1) Mrs. Pucci finding copies of a homemade cut and paste card stating, "Val's Weight Soars to 200 Lbs! Big Top," posted through the Maintenance Department and placed on Mrs. Pucci's desk, inside her locked office; and 2) Mrs. Pucci overhearing one employee in her office stating to another employee, "Well, Charlie sent us in here to see Valerie. What are we suppose to do? Stick her then lick her?" Mrs. Pucci reported the overheard conversation to Supervisor Adams who seemed to side with the other employees.

Later, Mrs. Pucci found two cartoons depicting lewd and offensive jokes placed in her drawer, as well as more pornographic photographs. Mrs. Pucci met with Base Manager, Thomas E. Powell, to request a transfer. Mr. Powell suggested that Mrs. Pucci was to blame for the behavior of senior USAIR employees and maintenance workers. Mr. Powell then repeated Supervisor Adam's initial warning to Mrs. Pucci that she would be subject to hearing "industrial language" due to the fact that she was working with a group of men. Mrs. Pucci asked Supervisor Adams to issue her a standard maintenance uniform so she would not appear different from the other employees. Supervisor Adams denied her request.

Until her transfer to Kansas City, Missouri, Mrs. Pucci continued to find pornographic materials inside her desk. One day she received by mail a large red Valentine card reading, "On Valentine's Day, remember—candy is dandy ... but sex won't rot your teeth! So what do you say!"

The harassment and abuse caused Mrs. Pucci to suffer a high level of stress and anxiety, withdrawal, headaches, depression, loss of sleep, weight, appetite, and loss of affection toward her husband. Mrs. Pucci felt isolated and distraught. Mrs. Pucci claims that this ultimately caused harm to her marriage with Mr. Pucci.

Mrs. Pucci sought medical treatment and counseling. Mr. Hagan, at USAIR's Employee Assistance Program, arranged for Mrs. Pucci to obtain psychiatric counseling. Mrs. Pucci was diagnosed with anxiety and fatigue resulting from work-related sexual harassment. Dr. Linda Harper, Mrs. Pucci's physician, prescribed the drug Adivan for her anxiety, and the drug Zoloft for her depression.

Mrs. Pucci was admitted as an outpatient at Charter Hospital Orlando South to obtain treatment for depression, marital discord and inability to cope with job stress. Mrs. Pucci's treatment at Charter took place daily from 8:00 a.m. to 5:00 p.m. for two consecutive weeks.

Due to all of the occurrences, Mrs. Pucci feared for her safety. That fear caused great anxiety arriving to and departing from work. She feared that the harasser(s) would eventually attack her. Due to her fear that she was being watched or stalked, Mrs. Pucci fell down a stairwell which led to her office, landing on her leg and straining her left knee. Her knee required medical attention, and caused her to miss two days of work.

Mrs. Pucci received her requested transfer to Kansas City, Missouri. Although the transfer caused financial hardship, Mrs. Pucci asked for the transfer in an effort to remove herself from the situation in Orlando. Within eleven months, Mrs. Pucci was transferred to Tampa due to the Kansas City, Missouri Operation being closed. Mr. and Mrs. Pucci claim that the transfers significantly disrupted their marriage and the lives of their three young children. Before all of the harassment in the Orlando facility began, Mrs. Pucci received positive employment reviews and recommendations.

Plaintiffs seek to recover on claims of intentional infliction of emotional distress, battery, assault, loss of consortium, tortious invasion of privacy, and negligence based on the acts of harassment that took place and USAIR's lack of efforts to protect Mrs. Pucci from those acts. Plaintiffs' pray for relief of the six claims include compensatory damages, specifically lost wages; lost of future income; costs of doctors, hospitals, medicine, therapy; compensation for pain and suffering; future loss of income and enjoyment of life; compensation for back pay and lost benefits; and their costs.

### MOTION TO DISMISS

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). A trial court, in ruling on a motion to dismiss, is required to view the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

■ Defendant moves to dismiss Count I, a claim for intentional infliction of emotional distress, for failure to state a claim. Under Florida law, Plaintiffs must establish the following to state a claim for intentional infliction of mental distress:

1) deliberate or reckless infliction of mental suffering by defendant; 2) by outrageous conduct; 3) which conduct of the defendant must have caused the suffering; and 4) the suffering must have been severe. *Golden v. Complete Holdings, Inc.,* 818 F.Supp. 1495, 1499 (M.D.Fla.1993) (citing *Metropolitan Life Ins. Co. v. McCarson,* 467 So.2d 277, 278 (Fla.1985)).

Whether a defendant's conduct is sufficiently outrageous to state a claim for intentional infliction of emotional distress is a not a question of fact but a question of law for the court to decide. *Id.* at 1499–1500.

■ In an action for intentional infliction of emotional distress, the Florida Supreme Court held that the plaintiff must establish that the defendant's conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *McCarson,* 467 So.2d at 278–279. Liability for the intentional infliction of emotional distress does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Scheller v. American Medical International, Inc.,* 502 So.2d 1268, 1271 (Fla.App. 4 Dist.1987) (quoting the Restatement (Second) of Torts Section 46 (1965)).

In quoting *Miranda v. B & B Cash Grocery Stores,* 1990 WL 107559 at *3, 1990 U.S.Dist. Lexis 9350 at *6–*7, the Court in *Watson v. Bally Mfg. Corp.,* 844 F.Supp. 1533, 1536 (S.D.Fla.1993), concluded:

To date, no Florida court has found that any plaintiff has stated a cause of action for this tort in the employment context. In fact, courts have rejected claims for intentional infliction of emotional distress in circumstances involving alleged sexual harassment, intentional race discrimination, and verbal abuse on the part of the employer....

Federal courts in this circuit have been equally unwilling to find a cause of action for this tort in the employment context.

■ The Court has reviewed Defendant's memorandum and motion to dismiss Count I of the Complaint and Plaintiffs' memorandum in opposition to Defendant's motion. The alleged behavior to which Mrs. Pucci was subjected is not civilized behavior. However, the acts described in the complaint do not reach the level of outrageousness required by Florida courts in a claim for intentional infliction of emotional distress in the employment context. The issue of vicarious liability does not require discussion in regard to this claim. The Court grants the Motion to Dismiss Count I.

■ Defendant moves to dismiss Count II, a claim for battery, and Count III, a claim for assault. Under Florida law, assault is defined as:

an intentional unlawful offer of corporal injury to another by force, or force unlawfully directed toward the person of another, under such circumstances as to create a fear of imminent peril, coupled with the apparent present ability to effectuate the attempt. *Newman v. Gehl Corp.,* 731 F.Supp. 1048, 1050 (M.D.Fla.1990).

Plaintiffs allege that USAIR made physical contact with Mrs. Pucci, that USAIR intended to make the physical contact to Mrs. Pucci, and that USAIR created a reasonable fear of imminent peril. However, Plaintiffs do not allege any facts which could support these contentions. The Court grants Defendant's Motion to Dismiss Count II and Count III, with leave to amend the Complaint, within 20 days, to include facts to support Plaintiffs' contentions.

■ Count V, a claim for tortious invasion of privacy, alleges the necessary elements upon which relief may be granted as to the specific category of "public disclosure of private facts." The Court denies the Motion to Dismiss Count V.

■ A claim for the loss of consortium is only a derivative claim arising from the cause of action of the injured party. *Doran v. City of Clearwater*, 814 F.Supp. 1079, 1080 (M.D.Fla.1993). If the initial plaintiff can allege some substantial injury, then a cause of action for loss of consortium may be maintained. *Hunter v. United States*, 739 F.Supp. 569, 577 (M.D.Fla.1990) (citations omitted). Plaintiffs allege substantial injury in Count V, a claim for tortious invasion of privacy, and Count VI, a claim for negligence, of their Complaint, from which a derivative claim by Mr. Pucci for loss of consortium may arise. The Court denies Defendant's Motion to Dismiss Count IV.

## MOTION FOR MORE DEFINITE STATEMENT

■ A motion for a more definite statement should only be granted if a pleading is so vague or ambiguous that a party cannot reasonably be expected to respond. *Scarfato v. National Cash Register Corp.*, 830 F.Supp. 1441 (M.D.Fla.1993). Motions for a more definite statement are generally denied in federal court. *Bazal v. Belford Trucking Co.*, 442 F.Supp. 1089, 1101 (S.D.Fla.1977).

■ Defendant moves for a more definite statement with regard to the entire complaint. Defendant argues that the statute of limitations may have run since Plaintiffs did not specify the dates as to when each act of harassment took place. Plaintiffs allege that since USAIR was notified of many, if not all, of the acts of harassment, the dates of the allegations are within Defendant's knowledge. If USAIR does not have records of the acts of harassment, it may obtain the information it needs through discovery. A motion for a more definite statement should not be used as a means of discovery. The Court denies the Motion for More Definite Statement as to the entire Complaint.

Defendant moves for a more definite statement with regard to Count V, a claim for tortious invasion of privacy. Defendant argues that Plaintiffs have not specified which category of tortious invasion of privacy they are alleging. Plaintiffs' memorandum in opposition states that Plaintiffs are alleging "public disclosure of private facts." After consideration, the Court **denies** the Motion for More Definite Statement.

## MOTION TO STRIKE

■ Motions to strike on the grounds of insufficiency, immateriality, irrelevancy, and redundancy are not favored, often being considered "time wasters," and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties. *Poston v. American President Lines, Ltd.*, 452 F.Supp. 568, 570 (S.D.Fla.1978), citing *Augustus v. Board of Public Instruction*, 306 F.2d 862 (5th Cir.1962). In evaluating a motion to strike, the court must treat all well pleaded facts as admitted and cannot consider matters beyond the pleadings. *U.S. Oil Co., Inc. v. Koch Refining Co.*, 518 F.Supp. 957, 959 (E.D.Wis.1981).

■ Defendant moves to strike Mrs. Pucci's claims for lost wages, back pay, loss of benefits, and loss of future employment as immaterial. Plaintiffs did not respond to this motion. Treating the pleaded facts of the Complaint as admitted, the claims may possibly relate to the controversy, and do not cause prejudice to the Defendant. After consideration, the Court **denies** the Motion to Strike. Accordingly it is

**ORDERED** that Defendant's Motion to Dismiss (Dkt. 8) be **granted** in part and **denied** in part. Defendant's Motion to Dismiss Counts I, II and III is **granted,** and Defendant's Motion to Dismiss Counts IV and V is **denied.** Defendant's Motion for More Definite Statement with regard to the entire Complaint is **denied;** Defendant's motion for a more definite statement with regard to Count V is **denied;** and Defendant's Motion to Strike Plaintiff's claims for lost wages, back pay, loss of benefits, and loss of future employment is **denied.**