Arthur JOHNSON, Plaintiff,

v.

Herbert WOODRUFF, individually and in his official capacity as manager of the United Insurance Company of America, Jim Murray individually and in his official capacity as District Manager of the United Insurance Company of America, and the United Insurance Company of America, an Illinois corporation, Defendants.

No. 97–1228–CIV–T–17.

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 16, 1998.

Merette Oweis, Dicesare, Davidson & Barker, P.A., Lakeland, FL, for Arthur Johnson, plaintiff.

William S. Josey, Carla Michelle Markowitz, Hinshaw & Culbertson, Tampa, FL, for Herbert Woodruff, Jim Murray, United Insurance Company of America, defendants.

### ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

KOVACHEVICH, Chief Judge.

THIS CAUSE is before the Court on Defendants' Motion for Partial Summary Judgment, filed August 3, 1998, (Docket Nos. 25–29 and 33) and Plaintiff's Response to Defendants' Motion for Partial Summary Judgment, filed September 16, 1998, (Docket No. 32).

### Facts

The following facts are alleged and/or established by the record before the Court considering the pending motion:

Plaintiff, Arthur Johnson, a black male, began employment with United Insurance Company of America, (hereinafter, "United"), in 1989. He worked for United until May 9, 1997, when he either quit or was terminated.

On January 19, 1996, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and the Florida Commission of Human Relations (FCHR) alleging a denial of promotion in October 1995 and January 1996, and of being divested of his book of business without his permission. The book of business is the customer route that Plaintiff had held and built up since 1989. Plaintiff alleges several occasions where he was denied a promotion to staff manager, including a denial of a promotion during a term of leave for disability. In September 1995, Plaintiff complained to Defendant Murray about race playing a part in his denial of a promotion to staff manager. In the Defendant's response to Plaintiff's EEOC complaint, Defendant stated that Plaintiff's production was down and in all likelihood, if he had not been on disability leave, he would have been fired. Allegedly, Plaintiff was told that he did not get promoted because his paperwork was poor, not because his production was down. Allegedly, Defendant Woodruff instructed a coworker to check all of Plaintiff's paperwork for deficiencies.

When Plaintiff returned from disability leave he had to rebuild a book of business as his had been given to another employee. Plaintiff was denied a promotion as staff manager in October 1996. Plaintiff was allegedly told by Defendant Woodruff that blacks "has to be three times as good as whites to be promoted." Other racist remarks were allegedly said to Plaintiff by his supervisor. Plaintiff was then offered a staff manager position that would require him to take a drastic pay-cut and to develop new business in three other routes, instead of his already established route. Plaintiff alleges that the positions other staff managers held had fully staffed routes.

In May 1997, Plaintiff requested a vacation in a manner that he and other coworkers allegedly had used in the past. His request was denied due to lack of notice. Plaintiff alleges that this is another rule, in addition to the client transfers and route divestments, which was applied to him differently than to white co-workers. On or about May 10, 1997, Plaintiff was notified by Defendant United that if he did not report to work the company would consider it a resignation. Plaintiff, reasoning he had "had enough," did not show up for work.

### Standard of Review

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue of material fact since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of the case with respect to which that party has the burden of proof. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its absence of genuine issue of material fact. That burden can be discharged by "showing...that there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 323, 325, 106 S.Ct. 2548. "Issues of fact are genuine only if a reasonable jury considering the evidence presented could find for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *Id.,* at 248, 106 S.Ct. 2505.

In determining whether a genuine issue of material fact exists, the court must consider all evidence in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant,* 595 F.2d 994, 996–97 (5th Cir.1979), quoting *Gross v. Southern Railroad Co.,* 414 F.2d 292 (5th Cir.1969).

Although factual disputes preclude summary judgment, the "mere possibility that factual disputes may exist, without more, is not sufficient to overcome a convincing presentation by the party seeking summary judgment." *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980).

### Constructive Discharge

In its memorandum in support of motion for summary judgment, Defendants claim that constructive discharge occurs for the purpose of employment discrimination when the employer, rather than directly discharging the employee, creates an intolerable work atmosphere that forces the employee to quit involuntarily. *Chertkova v. Connecticut General Life Ins. Co.,* 92 F.3d 81 (2nd Cir.1996).

■ Plaintiffs must show "the work environment and conditions of employment were so unbearable that a reasonable person in that person's position would be compelled to resign." *Virgo v. Riviera Beach Assoc., Ltd.,* 30 F.3d 1350, 1363 (11th Cir.1994). A *prima facie* case of constructive discharge is established if one may reasonably infer discrimination from the un-rebutted facts. *Castle v. Sangamo Weston, Inc.,* 837 F.2d 1550, 1559 (11th Cir.1988). If such is shown, the burden passes to the defendant to rebut by showing discharge occurred for a legitimate reason. *Id.* The defendant must raise a genuine issue of material fact to rebut. *Id.*

■ In this case, viewing the evidence in the light most favorable to Plaintiff, the

Court finds Plaintiff's claim for constructive discharge stems from a culmination of events, including such things as being divested of his book business, being denied promotions on at least four occasions, and being subject to racist remarks. This Court is satisfied that Plaintiff's evidence is sufficient to create a jury question as to whether a reasonable person would find the working conditions at issue so intolerable that Plaintiff was compelled to not show up to work, effectively resigning. Accordingly, summary judgment is inappropriate with regards to claims for constructive discharge.

### Statute of Limitations

 Plaintiff filed his charge of discrimination with the EEOC on January 19, 1996. Plaintiff's claims for damages begin in 1992 when he was denied a promotion. Plaintiff ·asserts the "continuing violation" doctrine as a narrow exception to the rule that charges brought outside the 300 day period are time-barred. Under the continuing violation doctrine "[i]f a series of discrete acts of discrimination continue into the statutory time filing period, then the cause of action is considered timely filed." *Coleman v. Clark Oil and Refining Co.,* 568 F.Supp. 1035, 1040 (E.D.Wis.1983). "To revive the otherwise time-barred claim under the doctrine, however, it must be part of a pattern of continuing practice out of which the timely-file incident arose." *Roberts v. Gadsden Memorial Hosp.,* 835 F.2d 793, 799 (11th Cir.1988). In *Roberts,* the court applied the "continuing violation" doctrine to a case involving a Title VII violation. In that case, the court reiterated that an employee who seeks to include such acts as would otherwise be time-barred in an otherwise timely charge of discrimination, must prove a "substantial nexus" between the acts. *Roberts,* at 799. "In determining the existence vel non of such a nexus, a court should not rely upon superficial factual analysis, but rather, should refer to a variety of factors. Such factors include whether the claims were related in subject matter, frequency, and permanence." *Id.* at 800.

 In analyzing the first factor, subject matter, the Court should consider whether the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation. *Simmons v. Contel/GTE Corporations,* 1994 WL 376274 (N.D.Ill.1994). In the present case, the incidents alleged by Plaintiff involve three staff manager positions that became available in 1992 and 1993. Plaintiff was rejected for all these positions. Another position was not available until 1995 when Plaintiff was once again rejected. Therefore, the subject matter, denial of promotions, is consistent between the charges.

The second factor is frequency of the events. Under the "continuing violation" exception, the alleged discriminatory actions should not be isolated incidents, but should be recurring in order to satisfy the exception. In the present case, Plaintiff alleges incidents of "being denied promotions on at least four occasions between October 1995 and November 1996; being denied promotions on at lease three other occasions prior to 1995." The denial of promotions is recurring and satisfies the second factor for frequency of events.

Finally, as to the permanence of these acts, the question is whether the act was sufficiently permanent in nature as to "trigger an employee's awareness of and duty to assert his or her rights." *Roberts,* quoting *Berry v. Board of Supervisors of L.S.U.,* 715 F.2d 971, 981 (5th Cir.1983). In this case, Plaintiff concedes that he complained about being denied these promotions at the time of each adverse promotion. The acts should have been enough to trigger the Plaintiff's awareness and duty to assert his or her rights. Furthermore, the Plaintiff alleges that United should have initiated an investigation or remedial action in response to each complaint. Therefore, Plaintiff can not, as a matter of law, rely on the continuing violation exception to the 300–day and 365–day limitations periods. Under Title VII, Plaintiff is statutorily barred from pursuing all claims arising prior to March 25, 1995 (300 days). Under the Florida Civil Rights Act, Plaintiff is statutorily barred from pursuing all claims arising prior to January 19,1995 (365 days).

#### *Position Made Available While On Leave*

Plaintiff was out on medical disability from December 18,1995, until March 11, 1996. During his deposition, Plaintiff conceded under oath that Defendant United did not have an obligation to promote him while he was out on total disability for three months. This constitutes a waiver of this claim. Accordingly, United is entitled to summary judgment in its favor with regard to the January 1996 promotion decision, as a matter of law.

#### *Intentional Infliction of Emotional Distress*

■ Count II of Plaintiff's Complaint contains a claim for intentional infliction of emotional distress against individual Defendants, Woodruff and Murray. The Plaintiff contends that Defendant Murray individually, and as an agent for United, intentionally and recklessly inflicted emotional distress upon Plaintiff by conduct which was outrageous and exceeded all bounds that could be reasonably tolerated by society.

■ The Defendants allege that since the Plaintiff testified that, in his opinion, Defendant Murray did not intentionally inflict emotional distress upon him, Defendant is entitled to summary judgment on this claim. Under Florida law, a claim for intentional infliction of emotional distress must include: deliberate or reckless infliction of mental suffering by the defendant by outrageous conduct causing suffering by the plaintiff, which was severe. *Metropolitan Life Ins. Co. v. McCarson,* 467 So.2d 277, 278 (Fla.1985). The conduct must be so "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 278–79. The Florida courts have set a high standard for plaintiffs asserting this claim, especially in the employment context. *Pucci v. USAir,* 940 F.Supp. 305, 309 (M.D.Fla.1996). Federal courts in the Eleventh Circuit have followed the lead of Florida courts in this manner.

The Plaintiff, through his complaint and subsequent testimony, has failed to establish that Defendant Murray's conduct rises to the level of conduct which is outrageous and exceeds all bounds that could be reasonably tolerated by society. Therefore, Defendant Murray is entitled to summary judgment in his favor on Count II.

The Court, having considered all the arguments of the parties, is convinced that the Motion for Partial Summary Judgment should be granted in favor of Defendant Jim Murray, with respect to Count II of Plaintiff's Complaint. This results in final judgment in favor of Murray, because Count II is the only remaining individual claim brought by Plaintiff against Murray. Partial summary judgment is granted for the remaining Defendants, United and Woodruff, for all Title VII claims arising prior to March 25, 1995, and all Florida Civil Rights Act claims arising prior to January 19, 1995. Partial summary judgment is granted in favor of Defendants, United and Woodruff, with respect to promotion decisions made while Johnson was out on medical leave of absence. Finally, partial summary judgment is denied as to claims for injunctive relief and for damages in Count I. Accordingly it is,

**ORDERED** that Defendant's Motion for Partial Summary Judgment be **DENIED** as to Count I but **GRANTED** for claims arising prior to March 25, 1995; **GRANTED** as to Defendant Murray in Count II; **GRANTED** as to Count IV for claims arising prior to January 19, 1995; **GRANTED** for claims pertaining to the January 1996 promotion decision; and the Clerk of Court be **DIRECTED** to enter judgment in favor of Defendant Murray.