Bessie **PARAOHAO,** Plaintiff,

v.

**BANKERS CLUB, INC., and Clubcorp., Inc.,** Defendants.

Nos. 01–2622–CIV., 01–2622–CIV.

United States District Court, S.D. Florida.

Aug. 28, 2002.

Andrew Clifford Hall, Adam Jason Lamb, Hall David & Joseph, Martin Ira Berger, Samole & Berger, Miami, for Bessie Paraohao, plaintiff.

Michael William Casey, III, Patricia Bango Diaz, Muller Mintz, Miami, for Banker's Club, Inc., Clubcorp, Inc., defendants.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BANDSTRA, United States Magistrate Judge.

**THIS CAUSE** came before the Court on Defendants' Motion for Summary Judgment (D.E.24) filed on April 30, 2002.[1] On August 13, 2002, the Court conducted a hearing on this motion, pursuant to Fed. R.Civ.P. 56, and heard oral argument of counsel. Thereafter, the Court reviewed the court file including the depositions and exhibits submitted by the parties. Following full review, and in consideration of applicable law, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment is **GRANTED** for reasons stated below.

---

**1.** The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge for all trial court proceedings pursuant to 28 U.S.C. § 636(c).

## INTRODUCTION

This is an action brought by plaintiff, Bessie Paraohao, to redress alleges sexual discrimination, sexual harassment and other wrongs at her former place of employment, the Bankers Club in Miami, Florida, and unlawful retaliation by her employer following her complaint of such harassment. Essentially, plaintiff alleges that she was subjected to a hostile work environment by her supervisor, Michael Alvarez, based on a series of alleged sexual comments and sexual advances by Alvarez over the course of several months in 2000. Plaintiff brings her claims pursuant to Title VII of the Civil Rights Act of 1964, and Section 760.10 of the Florida Civil Right Act, as well as Florida common law.

Defendants, Bankers Club, Inc. and Clubcorp., Inc., have denied all allegations of wrongdoing and, following a period of discovery, have moved for summary judgment on all claims pursuant to Fed. R.Civ.P. 56(c).

## Undisputed Facts [2]

Plaintiff, Bessie Paraohao, commenced employment at the Bankers Club as a server in February 2000. Plaintiff was thirty-six (36) years old at the time. Shortly after commencing employment, plaintiff was transferred to the accounting department to assist Michael Alvarez, the club accountant. Michael Alvarez was sixty-seven (67) years old at the time. Plaintiff was initially paid $9.00 an hour and was raised to $10.00 an hour shortly after commencing her employment.

Plaintiff and Alvarez worked together in the accounting department between April and August 2000. Plaintiff enjoyed working in the accounting department and needed to work because of her personal financial situation. Alvarez trained plaintiff as an accounting assistant and supervised her work. Plaintiff worked nearly fulltime in the accounting department but her hours varied occasionally and she was sometimes assigned to other work in the club such as serving and hostess positions. Nevertheless, plaintiff enjoyed her employment responsibilities in the accounting department very much and wanted to work fulltime in that department.

Sometime after April 2000, plaintiff and Alvarez began developing a personal and business relationship outside of the office. Plaintiff testified that she and Alvarez met for dinner and drinks on more than one occasion to discuss business opportunities together including real estate and an Internet sales operation. Plaintiff was interested in such opportunities to support her income; and Alvarez appeared to have experience and the financial ability to facilitate a business venture together. Plaintiff and Alvarez met frequently after work and discussed various business possibilities. Alvarez and plaintiff frequently drove together to various locations in Alvarez's vehicle, after which he dropped her at her vehicle parked in the Metrorail parking lot near plaintiff's home.

Between April and August 2000, plaintiff and Alvarez also developed a personal relationship with each other resulting in Alvarez expressing his affection to plaintiff on several occasions. Plaintiff and Alvarez met frequently for drinks and dinner at local restaurants; and plaintiff invited Alvarez to her home now and then when her husband was away. On one occasion, plaintiff and Alvarez engaged in sexual

---

**2.** The statement of undisputed facts is based on the deposition of plaintiff, Bessie Paraohao, certain documents submitted by the parties, and the Joint Pretrial Stipulation filed in this case. While certain matters are disputed in the record, such as the extent of the sexual relationship between plaintiff and Victor Alvarez, the Court has accepted the testimony of plaintiff as true, for purposes of this motion, where such matters are in dispute.

activity in Alvarez's vehicle at the Metrorail station. Alvarez called plaintiff the following day and briefly discussed the event. Plaintiff insisted that she allowed Alvarez to touch her in a sexual manner simply to make Alvarez happy— but then admitted that she, enjoyed the activity "a little." Plaintiff also allowed Alvarez to meet her daughters, take photographs of her in her home, and call her on the telephone. Plaintiff frequently used Alvarez's credit card to pay for gasoline, airline tickets, and other purchases, after which she reimbursed Alvarez for the charges. Plaintiff also discussed personal matters with Alvarez, such as her relationship with her husband and other men in her life.

Plaintiff's personal relationship with Alvarez led to increased familiarities inside the office. Alvarez frequently made sexually-oriented comments to plaintiff— commenting on her clothes, her walk, and his physical interest in her. On one occasion, Alvarez masturbated in plaintiff's presence in the accounting office. Plaintiff disliked Alvarez's sexual comments, his attempts to touch her in the office, and the increased frequency of such behaviors. While insulted by such conduct, plaintiff never complained to any co-workers or managers of the Bankers Club or told anyone else about Alvarez's inappropriate conduct until August 2000.[3] Plaintiff was concerned that she might not be believed if she complained to her employer about Alvarez; or that she might lose her job if she mentioned the subject to her employer.

In early August 2000, plaintiff decided to confront Alvarez about his conduct and ask him to change. Up to then, plaintiff had condoned Alvarez's behavior believing that he was simply a sick man whose conduct would pass. Also, plaintiff and Alvarez had gone into business together; and she continued to use Alvarez's credit card and accept small loans from him for personal matters. In early August 2000, plaintiff met with Alvarez at a local restaurant and asked him to change his behaviors. Alvarez said he could not do so.

Seeing no alternative, plaintiff returned to work and spoke to a co-worker, Stacy Goldworn, about the situation. Plaintiff merely told Ms. Goldworn that a person in the office was bothering her in a sexual way and asked her for advice. Goldworn called plaintiff that same evening to discuss the matter and then reported the matter to John Collier, the general manager of the Bankers Club.

The next day, August 10, 2000, Collier summoned plaintiff to his office and asked her about the problem. Plaintiff told Collier that Alvarez had been bothering her by saying sexual things to her. Plaintiff also reported that Alvarez had masturbated in her presence in the office. However, plaintiff did not tell Collier of her personal relationship with Alvarez, their frequent out-of-office meetings together, their business relationship, or their sexual encounter together. Nevertheless, Collier took immediate action by separating plaintiff from Alvarez— moving her to a hostess position for the remainder of the day. Plaintiff was not told that the transfer was permanent, and she continued to work. at the Bankers Club at the same pay rate and benefits. Collier also spoke to Alvarez about plaintiff's complaint as part of his investigation.

---

**3.** For purposes of this motion, the Court accepts as true the various sexual comments made by Alvarez to plaintiff as listed in her complaint. Also, the Court accepts as true plaintiff's allegations that Alvarez masturbated in her presence on one occasion in the office. The Court finds, however, that plaintiff willfully engaged in a personal relationship with Alvarez outside of the office, culminating in sexual activity together on at least one occasion, so that Alvarez's inappropriate office conduct was tolerated by plaintiff until she became too upset with that conduct in August 2000.

On August 14, 2000, plaintiff returned to work and asked to transfer back to the accounting department. Collier expressed concern but allowed plaintiff to do so after she signed a form acknowledging the investigation conducted by the Bankers Club of her complaint of sexual harassment by Alvarez, the Bankers Club's offer of other positions, and her desire to return to the accounting department working for Alvarez. Plaintiff returned to that department pursuant to her request; but only worked a couple of days before resigning her employment. Plaintiff refused to return to work, as requested by Collier, or to take a few days off before making a final decision. Instead, plaintiff filed a complaint with the Equal Employment Opportunity Commission as a pre-requisite to this lawsuit.

## STANDARD OF REVIEW

The court in reviewing a motion for summary judgment is guided by the standards set forth in Rule 56(c) of the Federal Rules of Civil Procedure which provides as follows:

> .... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law ....

The moving party bears the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Further, in addressing whether the moving party has satisfied this burden, the court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party. *Clemons v. Dougherty County, Ga.*, 684 F.2d 1365, 1368 (11th Cir.1982), *citing, Adickes v. S.H. Kress & Co.*, 398 U.S. at 157, 90 S.Ct. at 1608; *Augusta Iron & Steel Works v. Employers Insur-*

*ance of Wausau*, 835 F.2d 855, 856 (11th Cir.1988). If the record presents issues of material fact, the court must deny the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. at 157, 90 S.Ct. at 1608. The non-moving party, however, cannot rest upon mere allegations, but must rebut any facts properly presented by the moving party through affidavits or other evidence demonstrating the existence of a genuine and material issue of fact for trial. *Id.* at 398 U.S. 155, 90 S.Ct. at 1607. Moreover, summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

## ANALYSIS

Plaintiff has sued defendants for sexual harassment, sexual discrimination, hostile work place and retaliation in violation of Title VII and the Florida Civil Rights Act, and intentional infliction of emotional distress in violation of Florida common law. Plaintiff bases her various causes of action on Alvarez's sexual conduct and conversation in the office, his position as supervisor in the accounting department, and his "unwanted sexual comments, touching, vulgarities and solicitations" as more specifically listed in the complaint. Plaintiff alleges that she informed her supervisors "on numerous occasions" about Alvarez's actions; and that his actions were "well known to the officers and directors" of the Bankers Club. Complaint ¶ 17. Plaintiff further alleges that defendants took no action to address her complaints, discipline Alvarez, or enforce its policy against sexual harassment. Instead, plaintiff alleges, she was forced to accept a "downward transfer to becoming a server" and ultimately resigned her employment due

to "total inaction" by defendants to correct the situation. Plaintiff alleges that her forced resignation constitutes "a tangible employment detriment" and that she has suffered emotionally and financially as a result of defendants' violations.

Defendants had moved for summary judgment on all of plaintiff's claims, pursuant to Fed.R.Civ.P. 56, arguing that the undisputed facts of this case entitle defendants to dismissal due to plaintiff's failure to establish a *prima facie* case on any of her claims. Essentially, defendants contend that plaintiff's personal and business relationships with Alvarez, together with her willingness to engage in sexual activity with him, and her failure to complain about him for several months after such conduct ensued, establishes their right to summary judgment on all claims.

### A. *Title VII Claims*

Plaintiff, in Counts V, VI and VII of her Complaint, sues defendants for sexual harassment, sexual discrimination, hostile work environment, and retaliation in violation of 42 U.S.C. § 2000e–2 of Title VII of the Civil Rights Act of 1964 ("Title VII").[4]

### 1. *Hostile Work Environment Sexual Harassment*

■ Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, provides in pertinent part as follows:

(a) It shall be an unlawful employment practice for an employer -

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, be-

cause of such individual's race, color, religion, sex, or national origin. . . .

The Supreme Court has held that Title VII is intended to eradicate not only economic and tangible discrimination, but the entire spectrum of disparate treatment, which includes requiring people to work in a discriminatorily hostile or abusive environment. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49, (1986). Title VII is violated, therefore, when the work place is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *Id.* at 67, 106 S.Ct. 2399. To establish a claim of hostile environment harassment, an employee must prove:

1. that she belongs to a protected group;

2. that she was subjected to unwelcome sexual harassment;

3. that the harassment complained of was based upon sex;

4. that the harassment complained of affected a term, condition; or privilege of employment; and

5. that the employer knew or should have known of the harassment and failed to take prompt remedial action.

*Henson v. City of Dundee*, 682 F.2d 897, 903–05 (11th Cir.1982). *See also Faragher v. City of Boca Raton*, 864 F.Supp. 1552 (S.D.Fla.1994); *Schneider v. N.B.C. News Bureaus Inc.*, 801 F.Supp., 621, 632 (S.D.Fla.1991).

The parties do not dispute that plaintiff has established facts supporting the first and third elements of her Title VII claims.

---

4. Plaintiff's Complaint appears to confuse the Title VII claims in Counts VI and VII with similar claims alleged in Counts I, II, and III brought pursuant to the Florida Civil Rights Act, Fla. Stat. § 760.10. The Court addresses Count V, VI and VII as Title VII claims in view of the violations alleged in each count and not by the title to each count in the Complaint.

Plaintiff is a female and, therefore, is a member of a protected group. Further, the harassment of which she complains, in particular, the sexually-charged comments of Alvarez and the masturbation incident in her office, was based upon her gender and would not have occurred except for the fact that she is female. Plaintiff also has presented facts, albeit in dispute, that the harassment complained of affected a term, condition, or privilege of her employment, i.e., her right to work under conditions not charged with sexually-oriented comments and provocation by her supervisor. Plaintiff, however, has failed to establish genuine issues of fact to establish the remaining elements of her Title VII claims.

*No Evidence of Unwelcome Conduct*

Plaintiff first fails to establish any proof that she was subjected to unwelcome sexual conduct by Alvarez. In *Meritor Savings Bank v. Vinson, supra*, the Supreme Court stated that "the gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.'" 477 U.S. at 68, 106 S.Ct. 2399. The conduct at issue "must be unwelcome in the sense that the employee did not solicit or invite it, and in the sense that the employee regarded the conduct as undesirable or offensive." *Henson v. City of Dundee*, 682 F.2d at 903. Therefore "[t]he correct inquiry is whether the [plaintiff] by her conduct indicated that the [complained—of behavior] was unwelcome." *Meritor*, 477 U.S. at 68, 106 S.Ct. 2399.

Here, the factual record clearly reveals that plaintiff's conduct indicated her willingness and interest in developing a personal, business, and sexual relationship with Alvarez outside of the workplace so that his in-office comments and conduct, including his ostensibly vulgar act of masturbating in her presence, was not unwelcome to her as demonstrated by her willingness to work with Alvarez and engage in personal and sexual activity with him outside of the office. The factual record is clear, based on plaintiff's own deposition testimony, that plaintiff willingly agreed to repeatedly meet with Alvarez for dinner, drinks and personal reasons throughout the period of her employment at the Bankers Club. Plaintiff admits her interest in engaging in business activities with Alvarez which culminated in the formation of a corporation together in early August 2000. Moreover, plaintiff frequently invited Alvarez to her home (when her husband was away), introduced him to her daughters, allowed herself to be photographed by Alvarez, in a provocative way. Plaintiff also used his credit card to make numerous purchases until just before her resignation. Most importantly, plaintiff willingly engaged in sexual activity with Alvarez, on at least one occasion, which she later discussed with him by telephone and admitted to enjoying "a little." Thus, while plaintiff may have been insulted by Alvarez's sexual comments and conduct in the office, the record establishes her willing participation in many personal activities with Alvarez, including sexual activity, throughout her employment at the Bankers Club, so that no reasonable jury could find that his in-office behavior was "unwelcome" for Title VII purposes.

Moreover, in determining whether plaintiff, by her conduct, indicated that the behavior of co-worker or supervisor was unwelcome, the Court may consider whether, as well as the manner which, the plaintiff registered her complaint. *See Weinsheimer v. Rockwell International Corp.*, 754 F.Supp. 1559, 1564 (M.D.Fla. 1990), *aff'd.*, 949 F.2d 1162 (11th Cir.1991) (conduct not "unwelcome" where plaintiff did not report offensive behavior until months after it happened and, even then, only in the course of casual conversation with supervisor); *Vermett v. Hough*, 627 F.Supp. 587, 598–99 (W.D.Mich.1986) (no

sexual harassment found where plaintiff failed to report incident until three months later).

Here, plaintiff made absolutely no complaint to anyone at the Bankers Club concerning Alvarez's conduct until August 9, 2000— nearly four months after she started working with Alvarez with the accounting department. Even then, plaintiff only told a co-worker, Stacy Goldworn, who then reported the problem to John Collier, the general manager of the Bankers Club. Plaintiff, when questioned by Collier, reported only certain of Alvarez's conduct, leaving out her personal relationship with him, their business activities together, and their sexual activity. Plaintiff attempts to explain her failure to complain earlier by stating that she might not have been believed and did not want to jeopardize her position in the accounting department. Federal courts, however, have held that an employee's general fear of repercussion cannot form the basis of the employee's failure to complain of sexual harassment to her employer. *See Madray v. Publix Super Markets, Inc.,* 30 F.Supp.2d 1371 (S.D.Fla.1998) (citing *Fierro v. Saks Fifth Avenue,* 1998 WL 388971 (S.D.N.Y.1998)).

*No Knowledge by the Employer or Failure to Act*

■ Plaintiff also fails to present any proof of the final element of a harassment claim under Title VII, i.e., that her employer knew or should have known of the alleged harassment by Alvarez and failed to take prompt remedial action. While alleging such knowledge by defendants' officers and directors, plaintiff concedes at deposition that she told no one of Alvarez's conduct prior to August 9, 2000, when she told Stacy Goldworn of problems with a co-worker. Ms. Goldworn, in turn, then told John Collier as general manager of the club, and Collier immediately contacted plaintiff, questioned her about the situation, and initiated an investigation.

Meanwhile, Collier separated plaintiff from Alvarez, temporarily returning her to a hostess position, at the same pay rate and benefits. While plaintiff believes that other supervisors and officers at the club must have known about Alvarez and his complained-of conduct, she presents absolutely no evidence of such knowledge.

Thus, the Court can only conclude that defendants' response to plaintiff's allegations was prompt, and that its decision to temporarily re-assigned plaintiff, at the same pay and benefits, was reasonably calculated to address the situation pending more comprehensive review. *See Carmon v. Lubrizol,* 17 F.3d 791 (5th Cir.1994) (employer took prompt remedial action by transferring a co-worker to another shift in response to plaintiff's complaint that he made vulgar comments to her). Defendants' decision to temporarily transfer plaintiff, and not Alvarez, was reasonable under the circumstances due to the various work responsibilities of both employees and the incomplete information provided by plaintiff to Collier at the commencement of his investigation.

*2. Retaliatory Discharge*

■ Plaintiff also alleges that she was constructively discharged in retaliation for engaging in activity protected under Title VII. Title 42, U.S.C. § 2000e–3(a) provides in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter.

Therefore, to establish a claim for retaliatory discharge, a plaintiff must show:

1) that she engaged in statutorily protected expression;

2) that she suffered an adverse employment action; and

3) that there is some casual connection between the two events.

*Meeks v. Computer Associates International,* 15 F.3d 1013, 1021 (11th Cir.1994).

Plaintiff alleges that she was forced to resign her employment which, she contends, constitutes a "tangible employment detriment" in her Title VII retaliation claim. Plaintiff, however, presents no proof of a constructive discharge. Rather, plaintiff's own deposition testimony establishes that she insisted on returning to her accounting position with Alvarez; and that she quit her job within a few days thereafter. On these undisputed facts, plaintiff's retaliation claim fails for failure to present any proof of adverse employment action by defendants in response to her complaint of harassment by Alvarez.[5]

### B. State Law Claims

#### 1. Florida Civil Rights Act Violations

■ As stated above, plaintiff also sues defendants for sexual discrimination, sexual harassment, hostile work environment and retaliation under the unlawful employment practices provisions of the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10. Florida courts have held that decisions construing Title VII are applicable when considering claims under the FCRA because the Florida act was patterned after Title VII. *See Ranger Ins. Co. v. Bal Harbour Club, Inc.,* 549 So.2d 1005, 1009 (Fla.1989); *Florida State Univ. v. Sondel,* 685 So.2d 923, 925 n. 1 (Fla. DCA 1996); *Kelly v. K.D. Const. of Fla., Inc.,* 866 F.Supp. 1406, 1411 (S.D.Fla.1994). No Florida court has interpreted the FCRA to impose liability where Title VII does not.

*Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385 (11th Cir.1998).

Therefore, for the same reasons that the Court grants summary judgment on plaintiff's Title VII claims, the Court grants summary judgment to defendants on the same claims brought under the FCRA.

#### 2. Intentional Infliction of Emotional Distress

■ Finally, the Court finds that plaintiff has failed to raise genuine issues of material fact with respect to her tort claim for intentional infliction of emotional distress. Under Florida law, a *prima facie* case of intentional infliction of emotional distress requires proof of 1) deliberate or reckless infliction of mental suffering by a defendant; 2) by outrageous conduct; 3) which conduct must have caused the suffering; and 4) the suffering must be severe. *See Watson v. Bally Mfg. Corp.,* 844 F.Supp. 1533, 1536 (S.D.Fla.1993), *aff'd,* 84 F.3d 438 (1996).

Florida and federal courts are generally reluctant to recognize outrageous conduct in the employment context. *See e.g., Pucci v. USAir,* 940 F.Supp. 305, 309 (N.D.Fla. 1996); *Watson,* 844 F.Supp. at 1536. In fact, federal courts in this circuit have consistently held that even acts of lewd physical touching and obscene suggestive comments in sexual harassment cases, such as those alleged here, were not sufficiently outrageous, as a matter of law, to establish a claim for intentional infliction of emotional distress in the employment context. *Id.; see also Piech v. Arthur Andersen & Co.,* 841 F.Supp. 825, 832 (N.D.Ill. 1994). Also, employers are held liable for the tortious acts of its employees only where such actions were conducted, at least in part, to serve the employer.

**5.** Reaching this conclusion, the Court finds it unnecessary to determine whether plaintiff's Title VII claims also fail under the *Faragher/Ellerth* doctrine.

*Sparks v. Jay's A.C. & Refrigeration, Inc.,* 971 F.Supp. 1433 (M.D.Fla.1997).

Here, plaintiff alleges that defendants allowed plaintiff to be subjected to harassment in the form of unwanted sexual comments, touching, vulgarities, and solicitations by Alvarez resulting in her demotion and resignation. Once again, plaintiff presents absolutely no evidence of defendants' knowledge of such actions by Alvarez— much less their tolerance for such conduct. Also, plaintiff fails to show that Alvarez's actions were taken, even in part, to serve the defendant employer.

Accordingly, defendants are entitled to summary judgment on this claim as well.

### SUMMARY

For all of the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment is **GRANTED** pursuant to Fed. R.Civ.P. 56.