**Joseph DELFRATE, Plaintiff,**

v.

**LIBERTY MUTUAL FIRE INSURANCE COMPANY, Defendant.**

Case No. 8:10–cv–1091–T–23AEP.

United States District Court,
M.D. Florida,
Tampa Division.

July 16, 2010.

Peter O. Brick, Peter O. Brick & Associates, New Port Richey, FL, for Plaintiff.

Gideon Reitblat, Mark S. Shapiro, Akerman Senterfitt, Miami, FL, for Defendant.

## *ORDER*

STEVEN D. MERRYDAY, District Judge.

The plaintiff (the "insured") sues (Doc. 1) for breach of contract and intentional infliction of emotional distress based on the defendant's (the "insurer") failure to pay benefits under a homeowner's insurance policy. The insurer moves (Doc. 7) to dismiss the intentional infliction of emotional distress claim, and the insured responds (Doc. 8) in opposition.

### *Allegations of the Complaint*

The insured obtained a homeowner's policy from the insurer, which policy provided coverage from 2004 to 2007. In August and September, 2004, hurricanes Charlie and Francis damaged the roof on the insured's home. In order to stop "minor leaking," the insured employed a repairman to patch the roof. In 2005, under pressure from the homeowner's association, the insured hired someone to pressure clean the roof. However, the cleaner refused to wash the roof after discovering several loose tiles. The plaintiff submitted a claim to the insurer. Because of the insured's inability to locate a roofing contractor, the insured "hired people to remove the old roof and [ ]place [thirty] [pounds] [of] felt and tarp[ ]" on the roof. Excessive rain and wind blew the felt and tarp off of the roof and caused "extensive leaking." The insured again called the insurer and requested benefits under the policy.

The leak in the roof resulted in "extensive damage" inside the house consisting of black mold in the attic and on the walls. The insurer refused to pay (1) for a repair of the roof because the roof "was not built to code" or (2) for mold remediation because the roof continued to leak. In 2005, the insured located a roofing contractor and agreed to pay $32,500 for a new roof. After the contractor replaced the roof, the insured sued and refused to pay the contractor because "the contractor had not fully replaced damaged wood [ ]or repaired fascia appropriately." In due course, the insured settled the lawsuit and paid the contractor, because the insured wished to sell his home.

During this time, the insurer on four occasions offered "to settle the claims" of the insured. The insured refused each offer as inadequate. The insured alleges (1) that the insurer "with full[ ] knowledge" of the insured's "infirmities" and disabilities "engaged in a willful and outrageous pattern of delay and withholding of benefits . . . .;" (2) that, [n]otwithstanding the immediate danger presented by the increasing mold infestation, the [insurer] withheld payments and living expenses which forced [the insured] to live longer in

the mold infested house and aggravated mold condition;" and (3) that the insurer's conduct "was outrageous and deliberate and, knowing [of] [the insured's] infirmities, designed to force [the insured] to discount the full value of his claim." In 2007, due to the mold's effect on the insured's health, the insured vacated the house.

*Discussion*

The insurer argues (Doc. 7) for dismissal of count two because "mere delay and denial of an insurance claim, even if incorrect, cannot form the basis of a claim for intentional infliction of emotional distress as a matter of law." The insured responds in opposition (Doc. 8) but neither cites any legal authority in support of the insured's claim nor provides anything more than a restatement of the allegations of the complaint, including the conclusory allegation that the insurer "knowingly forced [the insured] to live in a mold infested house knowing it was causing serious physical injury."

In order to state a claim for intentional infliction of emotional distress, a plaintiff must allege facts showing outrageous conduct by the defendant. *See Dependable Life Ins. Co. v. Harris,* 510 So.2d 985, 986 (Fla. 5th DCA 1987). "Whether alleged conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a matter of law, not a question of fact." *Gandy v. Trans World Computer Tech. Grp.,* 787 So.2d 116, 119 (Fla. 2nd DCA 2001). A plaintiff fails to show outrageous conduct even if the plaintiff alleges that the defendant's conduct was (1) intentionally tortious or criminal, (2) intended to inflict emotional distress, (3) malicious, or (4) aggravated enough to warrant punitive damages. The defendant's conduct must qualify as " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atro-

cious, and utterly intolerable in a civilized community.'" *Metro. Life Ins. Co. v. McCarson,* 467 So.2d 277, 278–79 (Fla. 1985) (quoting Restatement (Second) of Torts § 46 (1965)).

In this action, accepting the insured's factual allegations as true, the insurer's conduct fails to rise to the level of outrageous conduct. The insurer offered four times in three years to settle the insured's claim. Even if the insurer's offers were either inadequate or "designed to force [the insured] to discount the full value of his claim," the insurer's conduct fails qualify as "outrageous" for the purpose of stating a claim for intentional infliction of emotional distress.

*Conclusion*

Accordingly, the insurer's motion (Doc. 7) is **GRANTED,** and count two of the complaint (Doc. 1) is **DISMISSED.**

ORDERED.